**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| ALEKSEY RUDERMAN, JASON CLARKE, JAHAT EVELYN, BASARU ASOLO, JAMES FORERO, and CHRIS POCKNELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>against<br><br>MCHENRY COUNTY and BILL PRIM, SHERIFF OF MCHENRY COUNTY<br><br>Defendants. | Docket No. 3:22-cv-50115<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR FORCED LABOR

Plaintiffs Aleksey Ruderman, Jason Clarke, Jahat Evelyn, Basaru Asolo, James Forero, and Chris Pocknell, on behalf of themselves and all others similarly situated, by and through their attorneys, for their Complaint against Defendants McHenry County and Bill Prim, the Sheriff of McHenry County, allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

### PRELIMINARY STATEMENT

1.      This is a putative class action complaint arising from Defendants' violations of the forced labor provisions in the federal Trafficking Victims Protection Act (the "TVPA"), U.S.C. §§ 1589, 1595.

2.      Plaintiffs are current and former civilly-detained immigrants who were subjected to forced labor while housed at the McHenry Detention Center in Woodstock,

Illinois. Specifically, Plaintiffs were forced to perform various janitorial and maintenance services without compensation and against their will.

3. McHenry County's detention facility unlawfully forced civil immigrant detainees to perform uncompensated labor to clean and maintain the premises. The civilly-detained immigrants receive no compensation whatsoever to perform their cleaning duties, which are mandatory. When immigrants, including Plaintiffs, refused to clean, they were punished by being locked in their cells or sent to solitary confinement, also known as the "hole."

4. While not paying the immigrant detainees a dime and forcing them to work on the threat of solitary confinement, McHenry County has reaped tens of millions from contracts with federal agencies that pay McHenry to house the immigrants. From just 2016 to 2020 alone, Defendants netted more than $41 million in revenue.

5. Plaintiffs seek to recover damages on behalf of themselves and all current and former civil immigration detainees who were forced to perform labor while being held in the detention center.

6. The practice of forcing immigrants to clean their cells and common living areas of the facility, for no pay whatsoever, and under the threat of punishment, is a violation of federal and state human trafficking laws. Specifically, the TVPA provides a civil cause of action against:

(a) Who[m]ever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

2

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. §§ 1589, 1595.

7.      As the U.S. Department of Justice recently explained (Case No. 21-2846, ECF No. 38, 3d Cir., Jan. 13, 2022), the TVPA "broadly prohibits coercive labor practices" and "was designed to encompass a wide range of coercive conduct," including "cases in which persons are held in a condition of servitude through nonviolent coercion, which might have the same purpose and effect of physical or legal coercion."

8.      McHenry's policies violate principles of justice, equity, and good conscience.  Additionally, solitary confinement causes severe mental pain and suffering.

## PARTIES

9.      At all times relevant to this Complaint, Plaintiff Aleksey Ruderman was a civilly-detained immigrant housed at the McHenry facility and was repeatedly forced to perform cleaning labor against his will and without any compensation.

10.      At all times relevant to this Complaint, Jason Clarke was a civilly-detained immigrant housed at the McHenry facility and was repeatedly forced to perform cleaning labor against his will and without any compensation.

11.      At all times relevant to this Complaint, Plaintiff Jahat Evelyn was a civilly-detained immigrant housed at the McHenry facility and was repeatedly forced to perform cleaning labor against his will and without any compensation.

3

12.     At all times relevant to this Complaint, Plaintiff Basaru Asolo was a civilly-detained immigrant housed at the McHenry facility and was repeatedly forced to perform cleaning labor against his will and without any compensation.

13.     At all times relevant to this Complaint, Plaintiff James Forero was a civilly-detained immigrant housed at the McHenry facility and was repeatedly forced to perform cleaning labor against his will and without any compensation.

14.     At all times relevant to this Complaint, Plaintiff Chris Pocknell was a civil immigration detainee at McHenry Detention center forced to perform cleaning labor.

15.     Defendant McHenry County is a public entity, operating under the laws of the State of Illinois, which is responsible for all of the acts and omissions of the McHenry County Sheriff and all of the Sheriff's deputies, agents and employees, including those named herein, and McHenry County Jail.

16.     At all times relevant to this Complaint, Defendant Bill Prim was the Sheriff of McHenry County. In committing the acts and omissions described in the Complaint, he was acting under color of law and within the course and scope of his employment. Defendant Prim is sued in his individual and official capacities.

## JURISDICTION AND VENUE

17.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, as Plaintiffs bring suit under the federal Human Trafficking Victim Protection Statute.

18.     The state law claims in this action are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy in Article III of the United States Constitution. The Court's jurisdiction over these claims is invoked under 28 U.S.C. § 1367.

4

19.     Venue is proper in the United State District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants are located in the Northern District of Illinois, and pursuant to § 1391(b)(2) because all of the acts and/or omissions complained of herein occurred within the Northern District of Illinois.

## STATEMENT OF FACTS

20.     Defendants operate the McHenry County Adult Correctional Facility located at 2200 N. Seminary, Woodstock, Illinois 60098.

21.     On or about August 1, 2003, McHenry County entered into an Intergovernmental Cooperative Agreement with the U.S. Marshal Service and the Immigration and Naturalization Service ("INS") to house civil immigration detainees for the "Chicago Field Office" of U.S. Immigration and Customs Enforcement ("ICE").

22.     Pursuant to this Agreement, Defendants received payment in the amount of $95 per day for each civil immigration detainee housed at the McHenry facility.

23.     From 2016 to 2020, the McHenry facility housed an average of 240 civil immigration detainees per day. In exchange for housing these individuals, Defendants netted more than $41 million of revenue over this five-year period.

24.     During this period, McHenry minimized costs by neglecting its obligations to adequately maintain the facilities. For example, it reported in its 2020 annual budget that the showers are between 10 and 25 years old and are in "fair to poor condition."

25.     Furthermore, according to the same budget report, McHenry simultaneously increased the number of immigrants it detained while reducing employee headcount in order to grow revenue.

5

26.     Plaintiffs Aleksey Ruderman, Jason Clarke, Jahat Evelyn, Basaru Asolo, James Chavez, and Chris Pocknell were all civilly-detained immigrants housed at the McHenry detention facility.

27.     During their time at the McHenry facility, Plaintiffs were forced to clean the showers and dayroom toilets, wipe down tables, sweep and mop the floors, wipe down cell doors, and clean the gym, among other things.

28.     McHenry's County's Jail Detainee Rule Book (the "Rule Book") itself describes the policy of having inmates clean the common areas, which are known as "dayrooms." This policy was disseminated to all civilly-detained immigrants, prominently displayed throughout the facility, and was available in audio form for those unable to read.

29.     As the Rule Book states:

> A copy of this handbook will be available to each inmate and certain sections are posted on the kiosks in each housing unit. All inmates will be held responsible for the handbook in your assigned cell. You are required to acknowledge, by signature, the receipt of the handbook. If you are unable to read, notify a staff member who will provide you with an audio version of this handbook.[1]

30.     Housing sections were locked down from 5:00 pm to 6:00 pm daily so that dayroom floors could be cleaned and mopped. The cleaning of each dayroom was the responsibility of everyone assigned to that area.[2]

31.     Defendants' agents would, on a daily basis, select approximately three or four detained immigrants, including all the Plaintiffs named in this Complaint, and order them to clean the common living areas, or dayrooms.

---

[1] Rule Book at 1.

[2] *Id.* at 12 (Housing Units & Regulations); *see id.* at 16 (Afternoon Shift Schedule).

32.     Plaintiffs, at all times, had no option to refuse these orders to clean the common areas of the facility.

33.     The Rule Book provides that "Basic Inmate Responsibilities" include the duties to "Follow and obey rules, laws, and policies, and procedures" and to "Obey all lawful orders as given by staff members."[3]

34.     The Rule Book also threatens a series of punishments for detainees who fail to follow rules and orders, including the requirement for performing uncompensated labor.

35.     A "Minor Violation" under the Rule Book includes "Failure to comply with any order or rule" and "Failure to perform routine cleaning duties."[4]

36.     Three or more Minor Violations within a 30-day period is considered a "Major Violation."[5]

37.     Sanctions for Minor Violations include "Cell Restriction for twenty-three (23) hours per day for up to three (3) days."[6]

38.     Sanctions for a "Major Violation" include "Disciplinary Segregation for up to fifteen (15) days per incident/charge" and "Placement in Administrative Segregation."[7]

39.     The Rule Book's threatened punishments also include:

- Criminal prosecution.

---

[3] *Id.* at 16.

[4] *Id.* at 18.

[5] *Id.* at 18.

[6] *Id.* at 17.

[7] *Id.* at 19.

- Loss of out of pod/section activities and the purchase of commissary luxury items.
- Loss of one or more privileges for no more than fifteen (15) days.
- Change in work assignment and/or living quarters.
- Loss of good time (up to thirty (30) days per infraction).
- Restitution.[8]

40.     Furthermore, the Rule Book threatens throwing detainees back into the "hole" even if that detainee has been released but then subsequently returns:

> If, while serving a disciplinary sanction in segregation, you are released from the facility, you will be placed back into disciplinary segregation if you later return to the facility. Your disciplinary status will be discussed at the next Classification Committee meeting to determine the appropriateness of completing your disciplinary sentence in segregation.[9]

41.     Upon initial entry into the facility, all civilly-detained immigrants are verbally told by staff that they must obey orders and clean if they wish to avoid going to the "hole."

42.     The guards routinely give orders to the detainees, including Plaintiffs, by screaming at them in an intimidating manner.

43.     Regularly, when one immigration detainee is accused of violating an order, every single detainee is sent to his cell under "lockdown" while the alleged violator is sent straight to the "hole." When alleged violators are returned to the cells, they often face social consequences for having caused everyone else to be locked down. This practice ensures militaristic compliance and discourages detained immigrants, many of whom cannot speak English, from questioning a guard's orders.

---

[8] *Id.*

[9] *Id.*

44. All Plaintiffs cleaned the dayrooms against their will and only because they were actually punished or operated under the threat of punishment by cell restrictions, commonly known as lockdowns, or by disciplinary segregation, known as solitary confinement or the "hole."

45. In addition to cell restrictions and solitary confinement, detainees who refused to perform cleaning labor were punished by losing recreational time, phone privileges, and access to the library, and being refused haircuts.

46. At no times did Plaintiffs ever consent to clean the dayrooms. At all times in which Plaintiffs were ordered to clean the dayrooms, Plaintiffs would not have elected to clean the dayrooms of their own volition.

47. Plaintiffs were never offered any compensation for any of their cleaning duties.

48. Defendants unjustly profited from their unlawful conduct, netting tens of millions in revenues since McHenry began housing federal detainees and civilly-detained immigrants in 2005.

49. Indeed, the McHenry County's FY2020-2021 Budget specifically notes that "[i]ntergovernmental revenue projection is derived by the Sheriff's ability to accept additional illegal immigrants from the U.S. Immigration and Custom Enforcement Agency under the Department of Homeland Security for holding in the County's jail as part of the Federal Inmate Bed Rental Program."

50. As noted in a 2017 McHenry County Revenue Budget Analysis prepared in conjunction with Defendant Prim, by forcing civilly-detained immigrants to provide uncompensated labor, Defendants were able to alter staffing ratios so that fewer

correctional officers are necessary to supervise the people it houses, thereby augmenting revenues. The same document further notes that "the Sheriff is hopeful that with the reduction in employee headcount and maintaining a daily census that can be serviced by the reduced headcount, the [detention] program could be advantageous for the County."

51. Pursuant to the Illinois Way Forward Act, 805 ILCS 5/30(b), as of January 2022, McHenry County can no longer house civil immigration detainees. Illinois adopted the Way Forward Act to expand protections for immigrant and refugee communities and to increase trust between these communities and the State.

52. However, McHenry County is challenging the lawfulness of the Illinois Way Forward Act. It sued the State of Illinois and filed a motion for a preliminary injunction, which was denied by the district court. No. 21-cv-50341 (N.D. Ill Dec. 27, 2021). The court held that federal law does not preempt the Way Forward Act. McHenry has appealed that decision and the appeal is pending before the U.S. Court of Appeals for the Seventh Circuit (Case No. 21-334).

53. McHenry County's filings in its lawsuit against Illinois lay bare its desire to continue to force civilly-detained immigrants to perform work so that Defendants can profit. As the district court observed in denying the preliminary injunction, McHenry's "claimed irreparable harm is mainly the loss of revenue [it] will suffer based on the termination of the agreement[.]" McHenry also claimed that its residents may be harmed "from higher taxes and reduced services" due to the loss of revenue. McHenry, on appeal, also claims that its inability to continue to house immigrants "will have a detrimental effect on [its] revenues."

**FACTS SPECIFIC TO PLAINTIFFS**

A.    **Plaintiff Aleksey Ruderman**

54.    Aleksey Ruderman was a civilly-detained immigrant transferred between several detention centers, and was housed at the McHenry facility between approximately 2016 and 2019.

55.    Mr. Ruderman was forced to perform cleaning tasks of common areas of the McHenry facility.

56.    Mr. Ruderman complied with his cleaning duties only because guards told him, upon entry, that refusing to clean would result in three-day cell lockdowns or a placement in solitary confinement for at least 14 days.

57.    On one occasion, a McHenry officer even forced Mr. Ruderman, an observant Jew, to perform cleaning labor on the Jewish holiday Rosh Hashanah, which violated Mr. Ruderman's religious principles.

58.    Mr. Ruderman never performed any cleaning duties at McHenry of his own volition.

B.    **Plaintiff Jason Clarke**

59.    Jason Clarke was a civilly-detained immigrant transferred between several detention centers, and was housed at the McHenry facility from approximately April 2018 to December 2018.

60.    Mr. Clarke was forced to clean the dayroom facilities, including the toilet, sweep and mop the floors, and clean tables.

61.    Mr. Clarke never performed any cleaning duties at McHenry of his own volition.

### C.     Plaintiff Jahat Evelyn

62.     Jahat Evelyn was a civilly-detained immigrant transferred between several detention centers, and was housed at the McHenry facility from December 2015 until December 2018.

63.     Mr. Evelyn was forced to clean the dayroom, bathroom, gyms, and other parts of the McHenry facility regularly.

64.     Mr. Evelyn was also punished several times for refusing to clean the dayrooms, by both receiving three-day lockdowns, and being sent to the "hole" for solitary confinement.

65.     Mr. Evelyn never performed any cleaning duties at McHenry of his own volition.

### D.     Plaintiff Basaru Asolo

66.     Basaru Asolo was a civilly-detained immigrant transferred between several detention centers, and was housed at the McHenry facility from September 27, 2020 until approximately November 26, 2021, when he was transferred to the Dodge County Detention Center in Wisconsin. He was later released from detention in Wisconsin on January 6, 2022.

67.     Mr. Asolo was forced to clean the dayroom and other common areas of the McHenry facility.

68.     He received a punishment consisting of a three-day lockdown for refusing to clean on at least one occasion.

69.     On at least one occasion during his confinement, a McHenry officer threatened Mr. Asolo that he would be deported unless he scrubbed the floor properly.

12

The officer informed Mr. Asolo that if he did scrub the floor properly, the officer would write a recommendation for his release.

70.     Mr. Asolo never performed any cleaning duties at McHenry of his own volition.

**E.     Plaintiff James Forero**

71.     James Forero was a civilly-detained immigrant who was housed at the McHenry facility from August 2017 until September 2018.

72.     Mr. Forero was forced to perform regular cleaning duties of the common areas of the facility.

73.     Guards physically dragged Mr. Forero to the "hole" for approximately 15 consecutive days, where the stress caused him to take anxiety medication 3 times per day.

74.     On Mr. Forero's birthday, the guards refused him his daily recreational hour for phone calls and showering because he refused to clean.

75.     Mr. Forero never performed any cleaning duties at McHenry of his own volition.

**F.     Plaintiff Chris Pocknell**

76.     Chris Pocknell was a civilly-detained immigrant transferred between several detention centers between 2014 and 2019. He was housed at the McHenry facility from approximately December 2016 to February 2019.

77.     Mr. Pocknell was forced to perform cleaning duties of the common areas of the McHenry facility.

78.     He was punished for refusing to clean despite having an injured knee, with a prescribed knee brace, by being placed on lockdown on over 3 occasions.

79.     He was also sent to the "hole" for refusing to clean on at least one occasion.

80.     Mr. Pocknell never performed any cleaning duties at McHenry of his own volition.

## CLASS ALLEGATIONS

81.     Plaintiffs bring their claims on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) on the basis that there is a well-defined community of interest in this litigation, the proposed class is easily ascertainable, and the proposed class is quite numerous.

82.      Plaintiffs' claims concern the mandatory, uncompensated work Plaintiffs and others similarly situated performed at the Defendants' facility.

83.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define this Forced Labor class, as follows:

> All civil immigration detainees who were forced to perform uncompensated work, such as janitorial services like cleaning and maintaining the common areas of the McHenry Detention Center, from ten years prior to the filing of this Complaint until the final disposition of this action.

84.     On information and belief, the injury to Plaintiffs and the putative class is substantial, exceeding one million and as much as several million dollars. Plaintiffs and the putative class were regularly subjected to the statutory and common-law violations described in herein, throughout their time at the McHenry facility. On information and belief, the legal and factual issues are common to the class and affect all class members.

85.    Plaintiffs reserve the right to amend or modify the class descriptions with greater specificity or division into subclasses, as well as to limit the class or subclasses or particular issues, as warranted.

**A.    Numerosity**

86.    All members of the Forced Labor class were forced to work during their detention.

87.    The class is so numerous that the joinder of all potential class members is impracticable. The exact size of the class is within the control of Defendants. However, Plaintiffs believe the class size is in the thousands. Membership of the class is readily ascertainable from Defendants' detention records.

**B.    Commonality and Predominance**

88.    The operative questions of law and fact regarding the liability of Defendants are common to the class and predominate over any individual issues which may exist. Common questions of law and fact include: whether Defendants' policy of requiring Plaintiffs and the class members to clean the common areas of the detention center with no pay and under threat of punishment violated 18 U.S.C. § 1589 and 740 ILCS 128, and whether Defendants were unjustly enriched by virtue of requiring Plaintiffs to perform uncompensated cleaning labor of the common areas of the facility.

**C.    Typicality**

89.     The claims asserted by Plaintiffs are typical of the claims of all the class members. The claim at issue arises from a policy applicable to all members of the class. Each member of the class suffered the same violations that give rise to Plaintiffs' claims. A class action is superior to other available methods for the fair and efficient

15

adjudication of this controversy because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial economy.

### D. Adequacy of Representation

90.     The representative Plaintiffs will fairly and adequately protect the interests of the members of the class. Because all class members were subject to the same violations of law perpetrated by Defendants, the interests of absent class members are coincident with, and not antagonistic to, those of Plaintiffs. The representative Plaintiffs will litigate their claims fully.

91.     The representative Plaintiffs are represented by counsel experienced in class action and civil rights litigation.

### E. Superiority of Class Action

92.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendants. If Defendants' forced labor policy was unlawful as applied to representative Plaintiffs, it was unlawful as applied to the members of the putative class.

93.     Those class members who labored for Defendants for short periods of time have small claims which they are unlikely to bring individually. All members of the class have claims which are factually similar and legally identical to Plaintiffs' claims. Thus, the interest of the members of the class in individually controlling the prosecution or defense of separate actions is slight, while the remedial purpose of the forced labor statutes counsels toward vindicating the rights of those employees with small claims as part of the larger class.

94.     Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

95.     Plaintiffs are unaware of any pending litigation commenced by members of the class concerning the instant controversy.

96.     It is desirable to concentrate this litigation in this forum because all claims arose in this Judicial District.

97.     The class action will not be difficult to manage due to the uniformity of the claims among the class members and the susceptibility of this case to both class action litigation and the use of representative testimony and representative documentary evidence.

98.     The contours of the class will be easily defined by reference to the detention records Defendants created and maintained.

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE TRAFFICKING
### VICTIMS PROTECTIONS ACT (18 U.S.C. §§ 1589, 1595)

99.     Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

100.     Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

101.     This Count concerns the mandatory, uncompensated work Plaintiffs and others similarly situated performed under Defendants' forced labor policy and practice. This Count does not concern any voluntary work performed by detainees.

102.     Defendants violated the federal Trafficking Victims Protections Act when they coerced Plaintiffs and others to work cleaning their own cells and common areas of the McHenry Detention Center for no pay.

103.     Defendants coerced this labor through both explicit and implied threats that those refused to perform such uncompensated work would be subject to discipline, up to and including, solitary confinement.

104.     Defendants coerced this labor through a uniform policy subjecting detainees who refused to perform such uncompensated work to discipline, up to and including, solitary confinement.

105.     Defendants provided or obtained the labor or services of Plaintiffs and others by means of physical restraint or threats of physical restraint to Plaintiffs and others in violation of 18 U.S.C. § 1589(a)(1).

106.     Defendants provided or obtained the labor or services of Plaintiffs and others by means of serious harm or threats of serious harm to Plaintiffs and others in violation of 18 U.S.C. § 1589(a)(2).

107.     Defendants provided or obtained the labor and services of Plaintiffs and others by means of a scheme, plan, or pattern intended to cause the Plaintiffs and others to believe that, if they did not perform such labor or services, they would suffer serious harm or physical restraint, including solitary confinement in violation of 18 U.S.C. § 1589(a)(4).

108.     Plaintiffs and others similarly situated were victims of forced labor as defined by 18 U.S.C. § 1589.

109.     Defendants are persons liable for their conduct under 18 U.S.C. § 1595.

18

## SECOND CLAIM FOR RELIEF

### VIOLATION OF ILLINOIS TRAFFICKING
### VICTIMS PROTECTIONS ACT (740 ILCS 128)

110.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

111.    Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

112.    By forcing Plaintiffs and others to do mandatory, uncompensated work under the threat of punishment, Defendants violated the involuntary servitude provision of the Illinois Trafficking Victims Protection Act, 740 ILCS 128/15(b-1).

113.    Defendants violated the Illinois Trafficking Victims Protection Act when they coerced Plaintiffs and others to work cleaning their own cells and common areas of the McHenry Detention Center for no pay.

114.    Defendants coerced this labor through both explicit and implied threats that those refused to perform such uncompensated work would be subject to discipline, up to and including, solitary confinement.

## THIRD CLAIM FOR RELIEF

### UNJUST ENRICHMENT

115.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

116.    Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

117.    Defendants have unjustly retained a benefit to the Plaintiffs' detriment by having the common areas of detainee facilities cleaned, for free, without having to hire

or contract the labor of cleaners that would otherwise have been compensated, or without compensating Plaintiffs.

118.    Defendants' retention of that benefit violates the fundamental principles of justice, equity, and good conscience because the Defendants cut costs by having their facilities cleaned by forcing detainees to labor under the threat of punishment, including solitary confinement.

119.    Plaintiffs are entitled to recover from Defendants all amounts that Defendants have wrongfully and improperly obtained, and Defendants should be required to disgorge to Plaintiffs and the class the benefits they have unjustly obtained.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Forced Labor class, request judgment as follows:

120.    Certifying the Forced Labor class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the class, and designating Plaintiffs' counsel as class counsel;

121.    Awarding Plaintiffs and the class members compensatory damages, actual damages, punitive damages, and statutory damages, in an amount exceeding $5,000,000, to be determined by proof;

122.    Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

123.    Awarding Plaintiffs and the class members reasonable attorneys' fees and costs as allowable by law;

124.    Awarding pre-judgment and post-judgment interest; and

125.    Granting any other relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of all issues so triable in this case

Dated: April 15, 2022
Chicago, IL

By: /s/ *Jay Kumar*
    Jay Kumar
Jay Kumar Law
73 W. Monroe St., #100
Chicago, IL 60603
(312) 767-7903
Jay@JayKumarLaw.com
*Attorneys for the Plaintiffs and the Proposed Class*


By: /s/ *Raphael Janove*
    Raphael Janove
    Adam Pollock *(pro hac vice admission forthcoming)*
    Agatha Cole *(pro hac vice admission forthcoming)*
Pollock Cohen LLP
60 Broad St., 24th Floor
New York, NY 10004
(212) 337-5361
Rafi@PollockCohen.com
Adam@PollockCohen.com
Agatha@PollockCohen.com
*Attorneys for the Plaintiffs and the Proposed Class*

By: /s/ *Jacob S. Briskman*
    Jacob S. Briskman
    A. Ross Cassingham
2054 N. California Ave.
Chicago, IL 60647
(312) 945- 6207
Jacob.Briskman@gmail.com
A.Ross.Cassingham@gmail.com
*Attorneys for the Plaintiffs and the Proposed Class*