**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | |
|---|---|
| ALEKSEY RUDERMAN, JASON CLARKE, JAHAT EVELYN, BASARU ASOLO, JAMES FORERO, and CHRIS POCKNELL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>against<br><br>MCHENRY COUNTY, MCHENRY COUNTY SHERIFF'S OFFICE, BILL PRIM, KEITH NYGREN, MICHAEL CLESCERI, DANIEL SITKIE, DAVID DEVANE, and DANIEL SEDLOCK,<br><br>Defendants. | Docket No. 3:22-cv-50115<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT FOR FORCED LABOR**

Plaintiffs Aleksey Ruderman, Jason Clarke, Jahat Evelyn, Basaru Asolo, James Forero, and Chris Pocknell, on behalf of themselves and all others similarly situated, by and through their attorneys, for their Complaint against Defendants McHenry County, McHenry County Sheriff's Office, Bill Prim, Keith Nygren, Michael Clesceri, Daniel Sitkie, David Devane, and Daniel Sedlock, allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a putative class action complaint arising from Defendants' violations of the forced labor provisions in the federal Trafficking Victims Protection Act (the "TVPA"), 18 U.S.C. §§ 1589, 1595.

2. Plaintiffs are civilly-detained immigrants who were subjected to forced labor while housed at the McHenry County Detention Center in Woodstock, Illinois. Specifically, Plaintiffs were forced to perform various janitorial and maintenance services (hereinafter "janitorial labor") without compensation and against their will.

3. The McHenry County Detention Center unlawfully forced civil immigrant detainees to perform janitorial labor. The civilly-detained immigrants received no compensation whatsoever for performing janitorial labor, which was mandatory. When immigrants, including Plaintiffs, refused to perform this labor, they were punished by being locked in their cells or sent to solitary confinement, also known as the "hole."

4. While not paying the immigrant detainees a dime and forcing them to work on the threat of solitary confinement, McHenry County has reaped tens of millions from contracts with federal agencies that pay McHenry County to house the immigrants. From just 2016 to 2020 alone, McHenry County netted more than $41 million in revenue.

5. Plaintiffs seek to recover damages on behalf of themselves and all current and former civil immigration detainees who were forced to perform labor while being held in the detention center.

6. The practice of forcing immigrants to perform janitorial labor under the threat of punishment is a violation of federal and state human trafficking laws. Specifically, the TVPA provides a civil cause of action against:

> (a) Who[m]ever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. §§ 1589, 1595.

7. As the U.S. Department of Justice recently explained (Case No. 21-2846, ECF No. 38, 3d Cir., Jan. 13, 2022), the TVPA "broadly prohibits coercive labor practices" and "was designed to encompass a wide range of coercive conduct," including "cases in which persons are held in a condition of servitude through nonviolent coercion, which might have the same purpose and effect of physical or legal coercion."

8. McHenry's policies violate principles of justice, equity, and good conscience. Additionally, solitary confinement causes severe mental pain and suffering.

## PARTIES

9. At times relevant to this Complaint, Plaintiff Aleksey Ruderman was a civilly-detained immigrant housed at the McHenry County Detention Center and was repeatedly forced to perform janitorial labor against his will and without any compensation.

10. At times relevant to this Complaint, Jason Clarke was a civilly-detained immigrant housed at the McHenry County Detention Center and was repeatedly forced to perform janitorial labor against his will and without any compensation.

11. At times relevant to this Complaint, Plaintiff Jahat Evelyn was a civilly-detained immigrant housed at the McHenry County Detention Center and was repeatedly forced to perform janitorial labor against his will and without any compensation.

12. At times relevant to this Complaint, Plaintiff Basaru Asolo was a civilly-detained immigrant housed at the McHenry County Detention Center and was repeatedly forced to perform janitorial labor against his will and without any compensation.

13. At times relevant to this Complaint, Plaintiff James Forero was a civilly-detained immigrant housed at the McHenry County Detention Center and was repeatedly forced to perform janitorial labor against his will and without any compensation.

14. At times relevant to this Complaint, Plaintiff Chris Pocknell was a civil immigration detainee at the McHenry County Detention Center forced to perform janitorial labor.

15. At all times relevant to this Complaint, Defendant McHenry County was a public entity operating within the State of Illinois. Defendant McHenry County is responsible for funding the McHenry County Sheriff's Office and, in turn, the McHenry County Detention Center, and thereby benefitted financially from Plaintiffs' forced labor.

16. At all times relevant to this Complaint, Defendant McHenry County Sheriff's Office was a public entity within the State of Illinois that operated the McHenry County Detention Center and benefitted financially from forced labor at the McHenry County Detention Center.[1]

17. At times relevant to this Complaint, Defendants Bill Prim and Keith Nygren were individuals who held the position of McHenry County Sheriff. These individuals set policy for the McHenry County Detention Center and obtained Plaintiffs' forced labor. Defendants Prim and Nygren are sued in their individual capacities.

18. At times relevant to this Complaint, Defendants Michael Clesceri, Daniel Sitkie, David Devane, and Daniel Sedlock were individuals who oversaw the

---

[1] Throughout this complaint, all references to "McHenry County Sheriff's Office" also mean the McHenry County Sheriff in his official capacity; they are legally equivalent. *See McMillian v. Monroe County, Alabama*, 520 U.S. 781, 785 n.2 (1997).

McHenry County Detention Center. These individuals enforced rules requiring Plaintiffs to engage in forced labor. Defendants Clesceri, Sitkie, Devane, and Sedlock are sued in their individual capacities.

## JURISDICTION AND VENUE

19. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, as Plaintiffs bring suit under the federal TVPA.

20. The state law claims in this action are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy in Article III of the United States Constitution. The Court's jurisdiction over these claims is invoked under 28 U.S.C. § 1367.

21. Venue is proper in the United State District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants are located in the Northern District of Illinois, and pursuant to § 1391(b)(2) because all of the acts and/or omissions complained of herein occurred within the Northern District of Illinois.

## STATEMENT OF FACTS

22. Defendants operate the McHenry County Adult Correctional Facility ("McHenry County Detention Center") located at 2200 N. Seminary, Woodstock, Illinois 60098.

23. On or about August 1, 2003, McHenry County entered into an Intergovernmental Cooperative Agreement with the U.S. Marshal Service and the Immigration and Naturalization Service ("INS") to house civil immigration detainees for the "Chicago Field Office" of U.S. Immigration and Customs Enforcement ("ICE").

24. Pursuant to this Agreement, McHenry County received payment in the amount of $95 per day for each civil immigration detainee housed at the McHenry County Detention Center.

25. From 2016 to 2020, the McHenry County Detention Center housed an average of 240 civil immigration detainees per day. In exchange for housing these individuals, McHenry County netted more than $41 million of revenue over this five-year period.

26. During this period, McHenry County and the McHenry County Sheriff's Office minimized costs by neglecting their obligations to adequately maintain the Detention Center. For example, McHenry County reported in its 2020 annual budget that the facility's showers are between 10 and 25 years old and are in "fair to poor condition."

27. Furthermore, according to the same budget report, McHenry County and the McHenry County Sheriff's Office simultaneously increased the number of immigrants it detained while reducing employee headcount to grow revenue.

28. Plaintiffs Aleksey Ruderman, Jason Clarke, Jahat Evelyn, Basaru Asolo, James Chavez, and Chris Pocknell were all civilly-detained immigrants housed at the McHenry County Detention Center.

29. During their time at the McHenry County Detention Center, Plaintiffs were forced to perform janitorial labor, for example, cleaning the showers and dayroom toilets, wiping down tables, sweeping and mopping the floors, wiping down doors, and cleaning the gym, among other things.

30. McHenry's County's Detainee Rule Book (the "Rule Book") itself describes the policy of having inmates clean the common areas, which are known as "dayrooms." This policy was disseminated to all civilly-detained immigrants, prominently displayed throughout the facility, and was available in audio form for those unable to read.

31. As the Rule Book states:

> A copy of this handbook will be available to each inmate and certain sections are posted on the kiosks in each housing unit. All inmates will be held responsible for the handbook in your assigned cell. You are required to acknowledge, by signature, the receipt of the handbook. If you are unable to read, notify a staff member who will provide you with an audio version of this handbook.[2]

32. Housing sections were locked down from 5:00 pm to 6:00 pm daily so that dayroom floors could be cleaned and mopped. The cleaning of each dayroom was the responsibility of everyone assigned to that area.[3]

33. Defendants' agents would, on a daily basis, select approximately three or four detained immigrants, including all the Plaintiffs named in this Complaint, and order them to perform janitorial labor in common living areas, or dayrooms.

34. On other occasions, Defendants' agents would require civilly-detained immigrants, including Plaintiffs, to perform other forced janitorial labor, for example, occasional facility "spring cleaning" using heavy machinery.

35. Plaintiffs, at all times, had no option to refuse these orders to clean the common areas of the facility.

---

[2] Rule Book at 1.

[3] *Id.* at 12 (Housing Units & Regulations); *see id.* at 16 (Afternoon Shift Schedule).

36. The Rule Book provides that "Basic Inmate Responsibilities" include the duties to "Follow and obey rules, laws, and policies, and procedures" and to "Obey all lawful orders as given by staff members."[4]

37. The Rule Book also threatens a series of punishments for detainees who fail to follow rules and orders, including the requirement for performing uncompensated labor.

38. A "Minor Violation" under the Rule Book includes "Failure to comply with any order or rule" and "Failure to perform routine cleaning duties."[5]

39. Three or more Minor Violations within a 30-day period is considered a "Major Violation."[6]

40. Sanctions for Minor Violations include "Cell Restriction for twenty-three (23) hours per day for up to three (3) days."[7]

41. Sanctions for a "Major Violation" include "Disciplinary Segregation for up to fifteen (15) days per incident/charge" and "Placement in Administrative Segregation."[8]

42. The Rule Book's threatened punishments also include:

- Criminal prosecution.
- Loss of out of pod/section activities and the purchase of commissary luxury items.
- Loss of one or more privileges for no more than fifteen (15) days.

---

[4] *Id.* at 16.

[5] *Id.* at 18.

[6] *Id.* at 18.

[7] *Id.* at 17.

[8] *Id.* at 19.

- Change in work assignment and/or living quarters.
- Loss of good time (up to thirty (30) days per infraction).
- Restitution.[9]

43. Furthermore, the Rule Book threatens throwing detainees back into the "hole" even if that detainee has been released but then subsequently returns:

> If, while serving a disciplinary sanction in segregation, you are released from the facility, you will be placed back into disciplinary segregation if you later return to the facility. Your disciplinary status will be discussed at the next Classification Committee meeting to determine the appropriateness of completing your disciplinary sentence in segregation.[10]

44. Upon initial entry into the facility, all civilly-detained immigrants are verbally told by staff that they must obey orders and perform labor if they wish to avoid going to the "hole."

45. The guards routinely give orders to the detainees, including Plaintiffs, by screaming at them in an intimidating manner.

46. Regularly, when one immigration detainee is accused of violating an order, every single detainee is sent to his cell under "lockdown" while the alleged violator is sent straight to the "hole." When alleged violators are returned to the cells, they often face social consequences for having caused everyone else to be locked down. This practice ensures militaristic compliance and discourages detained immigrants, many of whom cannot speak English, from questioning a guard's orders.

---

[9] *Id.*

[10] *Id.*

47. All Plaintiffs performed janitorial labor at the facility against their will and only because they were actually punished or operated under the threat of punishment by cell restrictions, commonly known as lockdowns, or by disciplinary segregation, known as solitary confinement or the "hole."

48. In addition to cell restrictions and solitary confinement, detainees who refused to perform labor were punished by losing recreational time, phone privileges, and access to the library, and being refused haircuts.

49. Plaintiffs never volunteered nor consented to perform janitorial labor.

50. Plaintiffs were never offered any compensation for any of their janitorial labor.

51. Grievances from other civilly-detained immigrants echo Plaintiffs' experiences. [11]

52. For instance, an immigrant detainee wrote the following on October 25, 2020 (all emphases and errors in originals):

> On 10/16/20 the pod officer did not give me a choice to clean. The officer stated that if I DID NOT clean I would be punished/lockdown. Then on 10/17/20 I was told the same thing. This is unfair treatment to me. I understand when it's my day to clean but I never choose to clean dayroom. The officers took advantage of me because I never volunteered & both times the officers told me to clean because it was my day or I would get locked down/punished. The only reason I cleaned was because they told (Officers told me) that if I did not clean I would be punished. I only cleaned both days because I did not want to be punished by officers and/or get written up. I never choosed or/and voluntered to clean dayroom ever. The officers TOLD me both days to clean dayroom or I

[11] Plaintiffs have gathered, through a Freedom of Information Act request, a series of grievances from civilly-detained immigrants at the McHenry County Detention Center regarding complaints of forced labor and forced cleaning duties. These grievances are attached hereto as Appendix A.

> would be punished/locked-down and written up. It's only because the officer(s) told me on 10/16/20 and 10/17/20 to clean dayroom or get written up & locked-down NOT because I choosed or volunteered.

53. On September 26, 2019, an immigrant detainee compared the practice of "FORC[ING] ME to Work Without Pay" to "A FORM OF iNSLAVERY." In the appeal of the denial of the grievance, the detainee further elaborated:

> I AM TIRED OF WORKING FOR FREE. I AM A HUMAN being with Rights Just like ANY ONE ELS. AND Not A SLAVE, WHAT YOU PEOPLE ARE DOING is iNSLAVING ME, I NEED TO GET PAID FOR EVERY WORK I DO."

54. Another wrote on August 7, 2019: "I SHOULDN'T HAVE TO CLEAN SOMEBODY ELSES MESS, SPECIALLY WITHOUT GETTING PAID," and asked:

> WHY DO I HAVE TO CLEAN IF I DIDN'T DO IT AND WITHOUT GETTING PAID, THIS IS NOT MY JOB TO DO ALSO WHY AM I BEING PUT ON LOCKDOWN FOR NOT CLEANING?

55. Similarly, a civilly-detained immigrant on July 5, 2019, wrote: "I am Being Forced to work in the pod, and if I REFUSE I get locked Down or sent to segregation," and that "I don't want to work and not Get Paid."

56. Another detained immigrant filed a grievance on September 1, 2015, stating that the forced labor "is absolutely unjust, unfair, and uncalled for. I feel like I have been unjustly used and coerced into doing somebody's else duties."

57. McHenry County Detention Center staff have repeatedly admitted to the jail's forced labor practices in response to such grievances from civilly-detained immigrants that complained about being forced to perform janitorial labor without pay and under threat of punishment.

58. For instance, in response to an October 17, 2020 grievance regarding forced janitorial labor under threat of punishment, the Sergeant asserted that "ALL INMATES/DETAINEES ARE REQUIRED TO DO THEIR FAIR SHARE OF CLEANING THE COMMON AREAS (DAYROOMS)."

59. In response to a grievance dated June 27, 2019, against the "McHenry County Sheriff who is making me work without being payed" that asked "I would like to be payed when I'm told to work dayroom," the Section Officer wrote that he or she "explained that Sheriff DOES NOT pay detainees for taking their turn in cleaning the dayroom it is the responsibility of ALL detainees to take a turn cleaning," and the Sergeant instructed the grieving detainee to "Please refer to your rulebook (page 13) for dayroom cleaning policy."

60. Furthermore, on February 15, 2013, in response to a detainee grievance regarding forced janitorial labor, then-Lieutenant Daniel Sitkie wrote:

> I HAVE READ YOUR GRIEVANCE. IT IS UNFOUNDED. READ YOUR RULEBOOK. IT STATES THAT EACH DAY THE DAYROOMS WILL BE CLEANED AFTER MEALS. THAT IS THE RESPONSIBILITIY OF THE INMATES AND DETAINEES TO DO THIS. . . . YOU NEED TO DO AS THE OFFICERS REQUEST; WHICH IS ALSO A RULE, WHICH IF YOU REFUSE YOU CAN BE LOCKED DOWN FOR.

61. Defendants McHenry County and McHenry County Sheriff's Office unjustly profited from their unlawful conduct, netting tens of millions in revenues since McHenry began housing federal detainees and civilly-detained immigrants in 2005.

62. Indeed, the McHenry County's FY2020-2021 Budget specifically notes that "[i]ntergovernmental revenue projection is derived by the Sheriff's ability to

accept additional illegal immigrants from the U.S. Immigration and Custom Enforcement Agency under the Department of Homeland Security for holding in the County's jail as part of the Federal Inmate Bed Rental Program."

63. As noted in a 2017 McHenry County Revenue Budget Analysis prepared in conjunction with Defendant Prim, by forcing civilly-detained immigrants to provide uncompensated labor, McHenry County and McHenry County Sheriff's Office were able to alter staffing ratios so that fewer correctional officers are necessary to supervise the people it houses, thereby augmenting revenues. The same document further notes that "the Sheriff is hopeful that with the reduction in employee headcount and maintaining a daily census that can be serviced by the reduced headcount, the [detention] program could be advantageous for the County."

64. Pursuant to the Illinois Way Forward Act, 5 ILCS 805/15, as of early 2022, the McHenry County Sheriff's Office could no longer house civil immigration detainees. Illinois adopted the Way Forward Act to expand protections for immigrant and refugee communities and to increase trust between these communities and the State.

65. As a result of McHenry County's strong financial interest in detaining immigrants, McHenry County filed a lawsuit challenging the lawfulness of the Illinois Way Forward Act, No. 21-cv-50341 (N.D. Ill. Dec. 27, 2021). The district court granted the State's motion to dismiss for failure to state a claim, and following

an appeal by McHenry County, the U.S. Court of Appeals for the Seventh Circuit affirmed (Case No. 21-3334, ECF No. 42, August 9, 2022).

66. McHenry County's filings in its lawsuit against Illinois lay bare its desire to continue to force civilly-detained immigrants to perform work so that Defendants can profit. As the district court observed in denying the preliminary injunction, McHenry's "claimed irreparable harm is mainly the loss of revenue [it] will suffer based on the termination of the agreement[.]" McHenry also claimed that its residents may be harmed "from higher taxes and reduced services" due to the loss of revenue. McHenry, on appeal, also claims that its inability to continue to house immigrants "will have a detrimental effect on [its] revenues."

67. After the original complaint in this matter was filed, Defendants confirmed that Plaintiffs were subjected to forced labor.

68. In a May 11, 2022 Chicago Tribune article, Defendant Clesceri admitted that Defendants force Plaintiffs and detainees to perform labor without compensation, and do so pursuant to the Rule Book:

> All inmates and detainees are responsible for doing their part to keep their cells and dayroom areas clean. The common dayroom cleanups are rotated daily by cells. Inmates and detainees are not paid for this function however. It is spelled out in the inmate handbook under housing unit rules and regulations. These are not considered jobs, rather a shared responsibility by all inmates/detainees to maintain a safe and healthy clean living environment.[12]

---

[12] Robert McCoppin, *Former Immigrant Detainees Sue McHenry County Sheriff, Claiming They Were Illegally Forced into Labor While Housed in Jail*, Chicago Tribune, May 12, 2022, https://www.msn.com/en-us/news/us/former-immigrant-detainees-sue-mchenry-county-sheriff-claiming-they-were-illegally-forced-into-labor-while-housed-in-jail/ar-AAX97fW.

69. As further reported in a May 12, 2022, Northwest Herald article, McHenry County Sheriff's Office spokesman Kevin Byrnes also confirmed that McHenry does not compensate detainees for performing janitorial labor in the common areas.[13]

## FACTS SPECIFIC TO PLAINTIFFS

### A. Plaintiff Aleksey Ruderman

70. Aleksey Ruderman was a civilly-detained immigrant transferred between several detention centers, and was housed at the McHenry County Detention Center between approximately 2016 and 2019.

71. Mr. Ruderman was forced to perform janitorial labor in common areas of the facility.

72. Mr. Ruderman completed this labor only because guards told him, upon entry, that refusing to clean would result in three-day cell lockdowns or a placement in solitary confinement for at least 14 days.

73. On one occasion, a McHenry County Detention Center officer even forced Mr. Ruderman, an observant Jew, to perform labor on the Jewish holiday, Rosh Hashanah, which violated Mr. Ruderman's religious principles.

74. Mr. Ruderman also explained to a correctional officer at the facility that this uncompensated labor amounted to slavery.

---

[13] James T. Norman, *McHenry County, Sheriff Sued for Allegedly Forcing Immigrant Detainees to do Janitorial Work 'Against Their Will' or be Punished*, Northwest Herald, May 13, 2022, https://www.shawlocal.com/northwest-herald/news/2022/05/13/mchenry-county-sheriff-sued-for-allegedly-forcing-immigrant-detainees-to-do-janitorial-work-against-their-will-or-be-punished/.

75. Mr. Ruderman never performed labor at the facility of his own volition.

**B. Plaintiff Jason Clarke**

76. Jason Clarke was a civilly-detained immigrant transferred between several detention centers, and was housed at the McHenry County Detention Center from approximately April 2018 to December 2018.

77. Mr. Clarke was forced to perform janitorial labor in dayroom areas of the McHenry County Detention Facility, including cleaning the toilet, sweeping and mopping the floors, and cleaning tables.

78. Mr. Clarke never performed labor at the facility of his own volition.

**C. Plaintiff Jahat Evelyn**

79. Jahat Evelyn was a civilly-detained immigrant transferred between several detention centers, and was housed at the McHenry County Detention Center from December 2015 until December 2018.

80. Mr. Evelyn was forced to perform janitorial labor in the dayroom, bathroom, gyms, and other parts of the facility regularly.

81. Mr. Evelyn was also punished several times for refusing to perform this labor, by both receiving three-day lockdowns, and being sent to the "hole" for solitary confinement.

82. Mr. Evelyn never performed labor at the facility of his own volition.

**D. Plaintiff Basaru Asolo**

83. Basaru Asolo was a civilly-detained immigrant transferred between several detention centers and was housed at the McHenry County Detention Center

from September 27, 2020, until approximately November 26, 2021, when he was transferred to the Dodge County Detention Center in Wisconsin. He was later released from detention in Wisconsin on January 6, 2022.

84. Mr. Asolo was forced to perform janitorial labor in the facility's dayroom and other common areas.

85. He received a punishment consisting of a three-day lockdown for refusing to perform this labor on at least one occasion.

86. On at least one occasion during his confinement, a guard threatened Mr. Asolo that he would be deported unless he performed forced labor properly. The guard also informed Mr. Asolo that if he did scrub the floor properly, the officer would write a recommendation for his release.

87. Mr. Asolo never performed labor at the facility of his own volition.

**E. Plaintiff James Forero**

88. James Forero was a civilly-detained immigrant who was housed at the McHenry County Detention Center from August 2017 until September 2018.

89. Mr. Forero was forced to perform regular janitorial labor in common areas of the facility.

90. Guards physically dragged Mr. Forero to the "hole" for approximately 15 consecutive days, where the stress caused him to take anxiety medication 3 times per day.

91. On Mr. Forero's birthday, the guards refused him his daily recreational hour for phone calls and showering because he refused to perform forced labor.

92. Mr. Forero never performed labor at the facility of his own volition.

**F. Plaintiff Chris Pocknell**

93. Chris Pocknell was a civilly-detained immigrant transferred between several detention centers between 2014 and 2019. He was housed at the McHenry County Detention Center from approximately December 2016 to February 2019.

94. Mr. Pocknell was forced to perform janitorial labor in common areas of the facility.

95. He was punished for refusing to perform this labor despite having an injured knee, with a prescribed knee brace, by being placed on lockdown on over 3 occasions.

96. He was also sent to the "hole" for refusing to provide labor on at least one occasion.

97. Mr. Pocknell never performed any labor at the facility of his own volition.

## CLASS ALLEGATIONS

98. Plaintiffs bring their claims on behalf of themselves, and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) on the basis that there is a well-defined community of interest in this litigation, the proposed class is easily ascertainable, and the proposed class is quite numerous.

99. Plaintiffs' claims concern the mandatory, uncompensated work Plaintiffs and others similarly situated performed at the McHenry County Detention Center.

100. Pending any modifications necessitated by discovery, Plaintiffs preliminarily define this Forced Labor class, as follows:

> All civil immigration detainees who were forced to perform uncompensated janitorial labor in the McHenry County Detention Center, from April 14, 2012, to February 28, 2022.

101. On information and belief, the injury to Plaintiffs and the putative class is substantial, exceeding one million and as much as several million dollars. Plaintiffs and the putative class were regularly subjected to the statutory and common-law violations described herein, throughout their time at the McHenry County Detention Center. On information and belief, the legal and factual issues are common to the class and affect all class members.

102. Plaintiffs reserve the right to amend or modify the class descriptions with greater specificity or division into subclasses, as well as to limit the class, subclasses, or particular issues, as warranted.

**A. Numerosity**

103. All members of the Forced Labor class were forced to work during their detention.

104. The class is so numerous that the joinder of all potential class members is impracticable. The exact size of the class is within the control of Defendants. However, Plaintiffs believe the class size is in the thousands. Membership of the class is readily ascertainable from Defendants' detention records.

**B. Commonality and Predominance**

105. The operative questions of law and fact regarding the liability of Defendants are common to the class and predominate over any individual issues which may exist. Common questions of law and fact include: whether the policy of requiring Plaintiffs and the class members to perform forced janitorial labor in the McHenry County Detention Center with no pay and under threat of punishment violated 18 U.S.C. § 1589 and 740 ILCS 128 and whether Defendants were unjustly enriched by virtue of requiring Plaintiffs to perform uncompensated janitorial labor at the facility.

**C. Typicality**

106. The claims asserted by Plaintiffs are typical of the claims of all the class members. The claim at issue arises from a policy applicable to all members of the class. Each member of the class suffered the same violations that give rise to Plaintiffs' claims. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial economy.

**D. Adequacy of Representation**

107. The representative Plaintiffs will fairly and adequately protect the interests of the members of the class. Because all class members were subject to the same violations of law perpetrated by Defendants, the interests of absent class members are coincident with, and not antagonistic to, those of Plaintiffs. The representative Plaintiffs will litigate their claims fully.

108. The representative Plaintiffs are represented by counsel experienced in class action and civil rights litigation.

**E. Superiority of Class Action**

109. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Defendants. If Defendants' forced labor policy was unlawful as applied to representative Plaintiffs, it was unlawful as applied to the members of the putative class.

110. Those class members who labored for Defendants for short periods of time have small claims that they are unlikely to bring individually. All members of the class have claims that are factually similar and legally identical to Plaintiffs' claims. Thus, the interest of the members of the class in individually controlling the prosecution or defense of separate actions is slight, while the remedial purpose of the forced labor statutes counsels toward vindicating the rights of those class members with small claims as part of the larger class.

111. Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

112. Plaintiffs are unaware of any pending litigation commenced by members of the class concerning the instant controversy.

113. It is desirable to concentrate this litigation in this forum because all claims arose in this Judicial District.

114. The class action will not be difficult to manage due to the uniformity of the claims among the class members and the susceptibility of this case to both class action litigation and the use of representative testimony and representative documentary evidence.

115. The contours of the class will be easily defined by reference to the detention records Defendants created and maintained.

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF THE TRAFFICKING VICTIMS PROTECTIONS ACT (18 U.S.C. §§ 1589, 1595)**

116. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

117. Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

118. This Count concerns the mandatory, uncompensated labor Plaintiffs and others similarly situated performed at the McHenry County Detention Center.

119. Defendants McHenry County Sheriff's Office, Prim, Nygren, Clesceri, Sitkie, Devane, and Sedlock violated the federal Trafficking Victims Protections Act when they forced Plaintiffs and others to perform labor at the McHenry County Detention Center for no pay.

120. Defendants coerced this labor through both explicit and implied threats that those who refused to perform such uncompensated work would be subject to discipline, up to and including, solitary confinement.

121. Defendants coerced this labor through a uniform policy subjecting detainees who refused to perform such uncompensated work to discipline, up to and including, solitary confinement.

122. Defendants provided or obtained the labor or services of Plaintiffs and others by means of physical restraint or threats of physical restraint to Plaintiffs and others in violation of 18 U.S.C. § 1589(a)(1).

123. Defendants provided or obtained the labor or services of Plaintiffs and others by means of serious harm or threats of serious harm to Plaintiffs and others in violation of 18 U.S.C. § 1589(a)(2).

124. Defendants provided or obtained the labor or services of Plaintiffs and others by means of the abuse or threatened abuse of law or legal process in violation of 18 U.S.C. § 1589(a)(3).

125. Defendants provided or obtained the labor and services of Plaintiffs and others by means of a scheme, plan, or pattern intended to cause the Plaintiffs and others to believe that, if they did not perform such labor or services, they would suffer serious harm or physical restraint, including solitary confinement in violation of 18 U.S.C. § 1589(a)(4).

126. Plaintiffs and others similarly situated were victims of forced labor as defined by 18 U.S.C. § 1589.

127. Defendants McHenry County and McHenry County Sheriff's Office knowingly benefitted financially from Plaintiffs' forced labor.

128. As a result of the misconduct described in this claim for relief, Plaintiffs suffered damages, including but not limited to emotional distress.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF ILLINOIS TRAFFICKING VICTIMS PROTECTIONS ACT (740 ILCS 128)

129. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

130. Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

131. By forcing Plaintiffs and others to do mandatory, uncompensated labor under the threat of punishment, Defendants violated the involuntary servitude provision of the Illinois Trafficking Victims Protection Act, 740 ILCS 128/15(b-1).

132. Defendants violated the Illinois Trafficking Victims Protection Act when they coerced Plaintiffs and others to perform labor at the McHenry County Detention Center for no pay.

133. Defendants coerced this labor through both explicit and implied threats that those who refused to perform such labor would be subject to discipline, up to and including solitary confinement.

134. As a result of this misconduct described in this claim for relief, Plaintiffs suffered damages, including but not limited to emotional distress.

## THIRD CLAIM FOR RELIEF

## UNJUST ENRICHMENT

135. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

136. Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

137. Defendants have unjustly retained a benefit to the Plaintiffs' detriment by having certain areas of McHenry County Detention Center cleaned, for free, without having to hire or contract the labor of cleaners that would otherwise have been compensated, or without compensating Plaintiffs.

138. Defendants' retention of that benefit violates the fundamental principles of justice, equity, and good conscience because the Defendants cut costs by forcing detainees to labor for free under the threat of punishment, including solitary confinement.

139. Plaintiffs are entitled to recover from Defendants all amounts that Defendants have wrongfully and improperly obtained, and Defendants should be required to disgorge to Plaintiffs and the class the benefits they have unjustly obtained.

## FOURTH CLAIM FOR RELIEF

## INDEMNIFICATION

140. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

141. Plaintiffs allege this claim on their own behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23.

142. At all times relevant to this Complaint, Defendants Prim, Nygren, Clesceri, Sitkie, Devane, and Sedlock were acting within the scope of their employment for the McHenry County Sherriff's Office.

143. Illinois law requires public entities to indemnify and pay tort judgments for compensatory damages for which employees are liable within the scope of their employment.

144. Illinois law requires McHenry County to indemnify and pay tort judgments against the McHenry County Sheriff's Office.

145. Defendant McHenry County is thus obligated to indemnify any judgment against Defendants McHenry County Sheriff's Office, Prim, Nygren, Clesceri, Sitkie, Devane, and/or Sedlock in this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Forced Labor class, request judgment as follows:

146. Certifying the Forced Labor class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the class, and designating Plaintiffs' counsel as class counsel;

147. Awarding Plaintiffs and the class members compensatory damages, actual damages, punitive damages, and statutory damages, in an amount exceeding $5,000,000, to be determined by proof;

148. Awarding Plaintiffs and the class members the costs of prosecuting this action, including expert witness fees;

149. Awarding Plaintiffs and the class members reasonable attorneys' fees and costs as allowable by law;

150. Awarding pre-judgment and post-judgment interest;

151. Entering judgment in Plaintiffs' favor on all claims and against all Defendants; and

152. Granting any other relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of all issues so triable in this case

Dated: August 9, 2022
Chicago, IL

By: /s/ *Margaret E. Truesdale*

Margaret E. Truesdale
70 W. Madison St., Ste. 4000
Chicago, IL 60602
(312) 580-0100
mtruesdale@hsplegal.com
*One of the Attorneys for the Plaintiffs and the Proposed Class*