IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ALEKSEY RUDERMAN, JASON CLARKE, JAHAT EVELYN, BASARU ASOLO, JAMES FORERO, and CHRIS POCKNELL, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MCHENRY COUNTY, MCHENRY COUNTY SHERIFF'S OFFICE, BILL PRIM, KEITH NYGREN, MICHAEL CLESCERI, DANIEL SITKIE, DAVID DEVANE, and DANIEL SEDLOCK, <br><br> Defendants. | Case No. 3:22-cv-50115 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Aleksey Ruderman, Jason Clarke, Jahat Evelyn, Basaru Asolo, James Forero, and Chris Pocknell were civilly detained immigrants housed at the McHenry Detention Center in Woodstock, Illinois. First Amended Compl. ("FAC"), Dkt. 21, ¶¶ 2, 9–14. According to Plaintiffs, they were forced to perform janitorial labor without compensation during their detention. *See generally* FAC, Dkt. 21. Plaintiffs seek to represent themselves and a class of "all current and former civil immigration detainees who were forced to perform labor while being held in the detention center." *Id.* at ¶ 5.

Plaintiffs sued McHenry County, the McHenry County Sheriff's Office, and McHenry County Sheriffs Bill Prim and Keith Nygren. *Id.* at ¶¶ 15–17. They also sued four individuals who oversaw the McHenry County Detention Center and enforced its rules requiring the alleged forced labor: Michael Clesceri, Daniel Sitkie, David Devane, and Daniel Sedlock. *Id.* at ¶ 18. Plaintiffs

1

allege violations of the federal Trafficking Victims Protections Act, 18 U.S.C. §§ 1589, 1595 ("TVPA"), and the Illinois Trafficking Victims Protection Act, 740 ILCS 128 ("ITVPA"). FAC, Dkt. 21, ¶¶ 116–34. Plaintiffs also assert claims of unjust enrichment. *Id.* at ¶¶ 135–39.[1]

Defendants moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). Dkt. 34. After analyzing Defendant's Motion to Dismiss [35], Plaintiff's Response [44] and Defendants' Reply [48], the Court grants Defendants' request to dismiss Plaintiff Ruderman, Clarke, Evelyn, Forero, and Pocknell's ITVPA and unjust enrichment claims against Defendants without prejudice. The Motion to Dismiss is otherwise denied.

## STATEMENT OF FACTS

Under an Intergovernmental Cooperation Agreement between the U.S. Marshal Service, the Immigration and Naturalization Service, and McHenry County, McHenry County agreed to house civil immigration detainees for Chicago's U.S. Immigration and Customs Enforcement field office. FAC, Dkt. 21, ¶ 23. Plaintiffs were some of the detainees held at the McHenry Detention Center. *Id.* at ¶¶ 5, 28. Mr. Ruderman was held from 2016 to 2019. *Id.* at ¶ 70. Mr. Clarke was held from April 2018 to December 2018. *Id.* at ¶ 76. Mr. Evelyn was held from December 2015 to December 2018. *Id.* at ¶ 79. Mr. Forero was held from August 2017 to September 2018. *Id.* at ¶ 88. Mr. Pocknell was held from 2014 to 2019. *Id.* at ¶ 93. And Mr. Asolo was held from September 2020 to November 2021. *Id.* at ¶ 83.

In exchange for housing civil immigration detainees, McHenry County received $95 per day per detainee. *Id.* at ¶ 24. From 2016 to 2020, McHenry housed an average of 240 civil detainees per day, netting more than $41 million of revenue during that time. *Id.* at ¶ 25.

---

[1] Plaintiffs also assert a claim for indemnification. FAC, Dkt. 21, ¶¶ 140–45. This claim does not affect the Court's analysis of Defendants' Motion to Dismiss.

2

But Defendants received more than just the per diem. The facts alleged in the FAC, which, at this stage in the proceedings must be taken as true, allege that for no pay, Plaintiffs were tasked with a host of cleaning and maintenance responsibilities, such as cleaning showers and common-area toilets, wiping down tables, sweeping and mopping the floors, wiping down cell doors, and cleaning the gym. *Id.* at ¶¶ 29. Plaintiffs were never offered compensation and never otherwise consented to these janitorial assignments. *See id.* at ¶¶ 2–3.

Indeed, Plaintiffs allege that they had "no option to refuse these orders to clean the common areas of the facility." *Id.* at ¶ 35. The lack of choice stemmed from the Rule Book, which was disseminated to each detainee and "prominently displayed throughout the facility." *Id.* at ¶ 30. The Rule Book required each detainee to "[f]ollow and obey rules, laws, and policies, and procedures," as well as "all lawful orders as given by staff members." *Id.* at ¶ 36. The Rule Book included "the policy of having inmates clean the common areas, which are known as 'dayrooms.'" *Id.* at ¶ 30.

Guards "routinely" screamed orders to the detainees "in an intimidating manner." *Id.* at ¶ 45. If detainees failed to follow the rules and orders, they faced a series of escalating punishments. *See id.* at ¶¶ 37–43.

When civilly-detained immigrants first enter the facility, they are "verbally told by staff that they must obey orders and perform labor if they wish to avoid going to the 'hole.'" *Id.* at ¶ 44. The "hole" is a form of Disciplinary Segregation known colloquially as solitary confinement. *Id.* at ¶ 47. Sanctions for "Minor Violations," such as "[f]ailure to comply with any order or rule" and "[f]ailure to perform routine cleaning duties," included "[c]ell restriction for twenty-three (23) hours per day for up to three (3) days." *Id.* at ¶¶ 38, 40. Three or more "Minor Violations" within a 30-day period resulted in a "Major Violation." *Id.* at ¶ 39. Sanctions for "Major Violations" included "Disciplinary Segregation for up to fifteen (15) days per incident/charge" and

"[p]lacement in Administrative Segregation." *Id.* at ¶ 41. Allegedly, other punishments existed: criminal prosecution, changes in work assignments or living quarters, restitution, the loss of "out of pod/section activities and the purchase of commissary items," the loss of good time (up to 30 days per infraction), and the loss of "one or more privileges" for no more than fifteen days." *Id.* at ¶ 42. These privileges included "recreational time, phone privileges," access to the library, and haircuts. *Id.* at ¶ 48.

Mr. Asolo was even threatened with deportation unless he performed his labor "properly." *Id.* at ¶ 86.

What's more, "regularly, when one immigration detainee [was] accused of violating an order, every single detainee [was] sent to his cell under 'lockdown' while the alleged violator [was] sent straight to the 'hole.'" *Id.* at ¶ 46. When the detainees placed in the "hole" were released, they "often face[d] social consequences for having caused everyone else to be locked down." *Id.* This caused a "militaristic compliance and discourage[d] detained immigrants, many of whom cannot speak English, from questioning a guard's orders." *Id.*

Facing these consequences, Plaintiffs cleaned the "dayrooms against their will and only because they were actually punished or operated under the threat of punishment" by lockdowns or solitary confinement. *Id.* at ¶ 47.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 only requires that a plaintiff's complaint allege a short and plain statement establishing the basis for the claim and the Court's jurisdiction, as well as prayer for the relief sought. Fed. R. Civ. P. 8(a). According to the Supreme Court, this means that the complaint's factual allegations, rather than any legal conclusions, must raise the plausible inference that the defendant is liable for the misconduct complained of. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). Although there are several exceptions, the Court is typically limited to reviewing the complaint's factual allegations under Rule 12(b)(6). *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992). Indeed, the defendant, as the moving party, bears the burden of establishing that the complaint's allegations, taken as true, are insufficient. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

A complaint "need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial)." *Sidney Hillman Health Ctr. of Rochester v. Abbot Labs, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Still, though, dismissal is appropriate when "the complaint alleges facts sufficient to establish that the suit is indeed tardy." *Amin Ijbara Equity Corp. v. Village of Oak Town*, 860 F.3d 489, 492 (7th Cir. 2017). In other words, the district court may grant dismissal under Rule 12(b)(6) when a plaintiff alleges claims that are "indisputably time-barred." *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005).

**ANALYSIS**

As discussed below, Plaintiffs have adequately alleged violations of the TVPA and ITVPA. However, besides Mr. Asolo's ITVPA and unjust enrichment claims, Plaintiffs' ITVPA and unjust enrichment claims are dismissed without prejudice as untimely.

I.  Plaintiffs have adequately alleged claims under the TVPA and ITVPA.

The TVPA establishes a civil cause of action for victims of prohibited trafficking activity. 18 U.S.C. § 1595. The victim of a "violation" of the TVPA "may bring a civil action against the perpetrator (or whoever knowingly benefits . . . )" from the violation. § 1595(a). As relevant to

this action, the TVPA's forced labor provisions prohibit "[w]hover" from knowingly obtaining the "labor or services of a person" by any one of, or by any combination of, four prohibited means:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589. The TVPA explains,

> The term 'serious harm' means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

§1589(c)(2).

The ITVPA is like the TVPA. It provides that "[a] person commits involuntary servitude when he or she knowingly subjects, attempts to subject, or engages in a conspiracy to subject another person to labor or services obtained or maintained" through any statutorily prohibited means, which are like those listed under the TVPA. 720 ILCS 5/10-9(b); 18 U.S.C. § 1589(a).

Defendants argue that the pronoun "whoever" in the TVPA does not include county governments. Dkt. 35, at 7. They also contend that that Plaintiffs failed to adequately allege forced labor or involuntary servitude under the TVPA and ITVPA. *Id.* at 3. Each argument is addressed in turn.

First, the plain statutory language of the TVPA extends liability to county governments. "The basic rule in statutory interpretation is that the plain statutory language governs." *Nestle Holdings, Inc. v. Cent. States, S.E. & S.W. Areas Pension Fund*, 342 F.3d 801, 804 (7th Cir. 2003).

6

The Court "assume[s] that the legislative purpose" of the statute "is expressed by the ordinary meaning of the words used." *United States v. Lock*, 466 F.3d 594, 598 (7th Cir. 2006) (internal citation and quotations omitted). "Absent a clearly expressed legislative intent to the contrary, the plain language should be conclusive." *Id.* The Court assumes the ordinary meaning of the text accurately expresses the legislative purpose. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). The Court may "look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).

Section 1595(a) allows a victim to sue "the perpetrator" for violations of the TVPA. § 1595(a). A "perpetrator" is "[w]hoever" violates the forced labor provisions at issue in this case. *See* § 1589(a). As the Eleventh Circuit explained, the word "'[w]hoever' . . . evinces no intent on the part of Congress to restrict the application of the statute to particular actors or particular victims." *Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1276 (11th Cir. 2020). The Court agrees with the Eleventh Circuit in that the "clear and unambiguous language of the statute limits liability only by reference to the actions taken by a would-be violator: it applies to anyone who knowingly 'obtains the labor or services of a person' through one of four coercive means explicitly listed in the statute." *Id.* at 1276–77.

Defendants erroneously suggest that The Dictionary Act changes this calculus. Dkt. 35, at 7. The Dictionary Act provides that, "unless the context indicates otherwise, the word "'whoever' include[s] corporations, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. §1. This list is "illustrative, not exhaustive." *Cont'l W. Ins. Co. v. Cheese Merchs. of Am., LLC*, 21-cv-1571, 2022 U.S. Dist. LEXIS 174275, at *14 (N.D. Ill. Sept. 27, 2022). The "word *include* does not ordinarily introduce an exhaustive list." *Id.* (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 132 (2012))

7

(emphasis in original). This interpretation is also consistent with the plain reading of section 1595(a), which allows a victim to hold the ubiquitously broad class of "perpetrator[s]" liable for their actions. *See* § 1595(a).[2]

Having determined that the term "whoever" encompasses county governments, the Court now turns to the parties' second dispute: whether Plaintiffs have adequately alleged forced labor and involuntary servitude. Dkt. 35, at 3–7; Dkt. 44, at 7–15.

The Court again begins its analysis by looking at the statutes themselves. *See Nestle Holdings, Inc.*, 342 F.3d at 804. Plaintiffs clearly allege that they provided janitorial labor or services to Defendants. *See generally* FAC, Dkt. 21. Defendants are thus left with the argument that Plaintiffs have not adequately alleged the labor or services were "*obtained*" through prohibited means. Dkt. 35, at 4. Defendants suggest that "Defendants could not obtain their housekeeping labor through the threat of physical restraint or force or threats of restraint or force when plaintiffs were already detained and subject to the punishments outlined in the detention center's rulebook." *Id.* at 4.

But the statutes do not distinguish between those who are detained and those who are not. *See* 18 U.S.C. § 1589(a); 720 ILCS 5/10-9(b). Indeed, other courts have recognized that civil immigration detainees may allege plausible claims under the TVPA. *See, e.g. Barrientos*, 951 F.3d at 1277; *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1132–33 (D. Colo. 2015). What's more, just because a punishment is included in the detention center's rule book does not mean that the punishments cannot lead to violations of the TVPA or ITVPA. Holding otherwise would effectively give detention centers veto power over Congress and state legislatures. The Court will

---

[2] Moreover, a county is a public corporation. *See Moor v. Cnty. of Alameda*, 411 U.S. 693 (1973); *Md. Use of Wash. Cnty. v. Balt. & O.R. Co.*, 44 U.S. 534, 550-51 (1845); *Clare v. Bell*, 37 N.E.2d 812 (1941).

not rewrite the statutes to include limitations that do not exist. *See Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017).

Taking the allegations in the FAC as true, *Marcure*, 992 F.3d at 631, Plaintiffs have sufficiently alleged that Defendants obtained Plaintiffs' labor or services through prohibited means. Threatening to deport a detainee to obtain proper janitorial labor is plausibly a threatened abuse of law or legal process, let alone the infliction of serious psychological harm sufficient to cause a reasonable person to perform the requested labor or services. *See* § 1589(c)(2); *United States v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008); *Mouloki v. Epee*, 262 F. Supp. 3d 684, 697 (N.D. Ill. 2017); FAC, Dkt. 21, at ¶ 86. Detainees are allegedly told that they must follow orders and clean or they will be put in the "hole." FAC, Dkt. 21, at ¶ 44. The threat is not an empty one; detainees have been placed in solitary confinement for allegedly violating orders. *See id.* at ¶ 46. Such allegations are sufficient to show a "scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm," let alone the infliction of serious harm. *See* § 1589(a)(4); *Figgs v. GEO Group, Inc.*, 18-cv-00089-TWP-MPB, 2019 U.S. Dist. LEXIS 53991, at *14–15 (S.D. Ind. Mar. 29, 2019).

With that, Plaintiffs have adequately alleged that Defendants obtained Plaintiffs' labor or services through prohibited means, and Plaintiffs therefore have sufficiently alleged TVPA and ITVPA claims.

II. The Court, at this juncture, need not determine whether the civic duty exception applies.

Defendants argue that Plaintiffs' allegations "are contrary to the longstanding 'civic duty' common law exception to the Thirteenth Amendment" which, according to Defendants, also

9

applies to the TVPA and "allows governments to require that detainees, mental hospital patients, and prisoners perform basic housekeeping chores without pay." Dkt. 35, at 5.

The 13th Amendment to the United States Constitution abolishes slavery and involuntary servitude. U.S. Const. Amend. XIII. It also "clothes Congress with power to pass all laws necessary and proper for abolishing all badges and incidents" thereof. *Civil Rights Cases*, 109 U.S. 3, 20 (1883).

But the 13th Amendment is not violated in all situations of compelled labor. *See Butler v. Perry*, 240 U.S. 328, 332–33 (1916). The Supreme Court explained why:

> [T]he 13th Amendment declares that neither slavery nor involuntary servitude shall exist ... It introduced no novel doctrine with respect of services always treated as exceptional, and certainly was not intended to interdict enforcement of those duties which individuals owe to the state, such as services in the army, militia, on the jury, etc.

*Id.*

So, "duties which individuals owe to the state" are insulated from the 13th Amendment's prohibitions. *Id.* at 333. It follows that detainees may be required to "perform simple housekeeping tasks in his or her own cell and community areas," so long as the work is not "overly burdensome in the time or labor required." *Bijeol v. Nelson*, 579 F.2d 423, 425 (7th Cir. 1978) (per curiam).

The parties dispute whether the TVPA includes this "civic duty" exception. But at this juncture, the Court need not decide this issue. Regardless of whether the "civic duty" exception applies, "what duties and tasks the detainees were compelled to undertake and whether these assignments amounted to more than general housekeeping tasks are factual issues." *Novoa v. GEO Group, Inc.*, EDCV 17-2514 JGB (SHKx), 2019 U.S. Dist. LEXIS, at *40 (C.D. Cal. June 21, 2018). Factual issues are not to be determined on a motion to dismiss. *See Craftwood II, Inc. v.*

*Generac Power Sys., Inc.*, 920 F.3d 479, 482 (7th Cir. 2019); *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir. 1979).

    III.    At this time, the Court cannot determine whether federal or state immunities apply.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Immunity is appropriate when the law, as applied to the facts, would have left objectively reasonable officials in a state of uncertainty." *Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018). The defense of qualified immunity does not apply to local governmental bodies, such as counties. *See Owen v. Independence*, 445 U.S. 622, 650 (1980).

Illinois state law also provides a form of immunity. Under the Local Governmental and Governmental Employees Tort Immunity Act (often simply referred to as the "Illinois Tort Immunity Act"), "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 Ill. Comp. Stat. 10/2-201.

An immunity defense "closely" turns on the facts of each case. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018). But, given Rule 8's liberal pleading standards, complaints "rarely develop a robust factual record." Fed. R. Civ. P. 8; *Reed*, 906 F.3d at 548. Moreover, Plaintiffs are generally not required to plead around–or "anticipate and overcome"–an immunity defense. *See Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). So, there is an obvious "tension" at the pleading stage "between developing the requisite facts for a well-informed qualified immunity

11

determination and preserving a government official's right to avoid the burdens of pretrial matters, including discovery." *Reed*, 906 F.3d at 548.

Although dismissal under Rule 12(b)(6) on qualified immunity grounds may be inappropriate in some cases, in other cases, it might be not only acceptable but mandatory. *Doe v. Village of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015). In this case, it's the former. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

Determining whether qualified immunity or the Illinois Tort Immunity Act applies requires a more complete record. Indeed, Defendants' immunity arguments rely on the suggestion that "[i]mplementing a housekeeping plan in accord with federal detention standards is not conduct which is so egregious that no reasonable person could not know that it violated an established right." *See* Dkt. 35, at 9, 12. The "housekeeping plan" or the "federal detention standards" that Defendants' rely on are not included in the FAC. *Id.*; FAC, Dkt. 21. The immunity inquiries will benefit from a more complete record, including further detail surrounding the "housekeeping plan," the operative "federal detention standards," the types of "labor or services" the individual defendants allegedly obtained, the types of discretion (if any) exercised, and how Defendants allegedly obtained such labor or services. Only then can the Court properly determine whether immunity applies.

    IV.    Plaintiffs Ruderman, Clarke, Evelyn, Forero, and Pocknell's ITVPA and unjust enrichment claims are untimely.

Under Illinois law, "[n]o civil action," other than a select few concerning patient care, "may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101.

Plaintiffs first filed their complaint on April 15, 2022. Compl., Dkt. 1. Only Mr. Asolo's alleged injuries accrued within one year before that date. FAC, Dkt. 21, ¶ 83.

Thus, Plaintiffs Ruderman, Clarke, Evelyn, Forero, and Pocknell's claims under the ITVPA and for unjust enrichment are "indisputably time-barred," as more than one year has passed since the last possible date they could have been injured. 745 ILCS 10/8-101; *Small*, 398 F.3d at 898. However, Mr. Asolo's ITVPA and unjust enrichment claims are timely. FAC, Dkt. 21, at ¶ 83. And Plaintiffs failed to respond to Defendants' argument that the state law claims raised by Plaintiff Ruderman, Clarke, Evelyn, Forero, and Pocknell were untimely. Dkt. 35, at 11. The Court may thus treat arguments to the contrary as forfeited. *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [34] is granted in part and denied in part. Plaintiffs Ruderman, Clarke, Evelyn, Forero, and Pocknell's' ITVPA and unjust enrichment claims against Defendants are dismissed without prejudice. Plaintiff Asolo's ITVPA and unjust enrichment claim can proceed. All TVPA claims can also proceed.

Date:  January 9, 2023

_____
Honorable Iain D. Johnston
United States District Judge