IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| ALEKSEY RUDERMAN, JASON CLARKE, JAHAT EVELYN, BASARU ASOLO, JAMES FORERO, and CHRIS POCKNELL on behalf of themselves and all other similarly situated, <br>     Plaintiffs, <br><br>v. <br><br>MCHENRY COUNTY MCHENRY COUNTY SHERIFF'S OFFICE, BILL PRIM, KEITH NYGREN, MICHAEL CLESCERI, DANIEL SITKIE, DAVID DEVANE, and DANIEL SEDLOCK <br>     Defendants. <br>v. <br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE); U.S. DEPARTMENT OF HOMELAND SECURITY (DHS); ALEJANDRO MAYORKAS, *under the title of Secretary of DHS*; PATRICK J. LECHLEITNER, *under title of Deputy Director and Senior Official performing the duties of the Director*; DANIEL A. BIBLE, *under title of Executive Associate Director, Enforcement and Removal Operations*; JENNIFER M. FENTON, *under the title of Associate Director, Office of Professional Responsibility*; SYLVIE RENDA, *under the title of ICE Chicago Field Office Director* <br><br>     Third-Party Defendants. | Case No. 22-CV-50115 <br><br>Judge Iain D. Johnston <br><br>Magistrate Judge Margaret J. Schneider |

## THIRD-PARTY COMPLAINT

Defendants, COUNTY OF McHENRY, McHENRY COUNTY SHERIFF'S OFFICE, BILL

PRIM, KEITH NYGREN, MICHAEL CLESCERI, DANIEL SITKIE, DAVID DEVANE and

1

DANIEL SEDLOCK, ("Third-Party Plaintiffs"), by and through their attorney, Patrick D. Kenneally, McHenry County State's Attorney, and his duly appointed Assistant State's Attorneys, Troy C. Owens, Andrew Hamilton, and Kyle Bruett, and in the alternative and without prejudice to their denial of plaintiff's claims against them, states the following for their Third-Party Complaint against Third-Party Defendants, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE); U.S. DEPARTMENT OF HOMELAND SECURITY (DHS); ALEJANDRO MAYORKAS; PATRICK J. LECHLEITNER; DANIEL A. BIBLE; ERIK P. BREITZKE; SYLVIE RENDA.

## JURISDICTION AND VENUE

1. This is a civil action arising under the federal Trafficking Victims Protection Act (the "TVPA") cited at U.S.C. §1589, 1595. The jurisdiction of this Court is conferred by 28 U.S.C. §1343.

2. The state law claims in this action are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy in Article III of the United States Constitution. The Court's jurisdiction over these claims is invoked under 28 U.S.C. §1367.

3. This Court has jurisdiction over the claims alleged in this Complaint against the Third-Party Defendants pursuant to 28 U.S.C. §§1346, 2671-2680 (Tucker Act and Federal Tort Claims Act).

4. The United States' sovereign immunity is waived under 28 U.S.C. §2674.

5. The Court has the authority to enter judgment in favor of Third-Party Plaintiffs under 28 U.S.C. §2674 and Federal Rules of Civil Procedure 58.

6. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(1).

**ACTION FOR INDEMNIFICATION AND CONTRIBUTION AGAINST ALL DEFENDANTS**

7. At all times relevant to the events at issue in this case, Third-Party Plaintiffs were under contract ("the Contract") with the Federal Government and Third-Party Defendants to provide housing and detention services to civil immigrant detainees. A copy of that contract is attached hereto as *Exhibit A*. The Federal Government was the initiator of the Contract, soliciting Third-Party Plaintiffs for the use of the McHenry County Jail as a site to house civil immigrant detainees.

8. Plaintiffs filed a Complaint against the above-named Defendants alleging that Defendants unlawfully forced civil immigrant detainees to perform uncompensated labor to clean and maintain the premises. A copy of Plaintiff's First Amended Complaint is attached hereto as *Exhibit B*.

9. Defendants and Third-Party Plaintiffs have filed their answer to Plaintiff's First Amended complaint denying all liability.

10. Pursuant to the applicable terms and conditions of the Contract, identified as *Exhibit A*, Third-Party Plaintiffs were required to notify "the Federal Government of any activity which would likely result in litigation..." Third-Party Plaintiff notified the Federal Government, via email to Daniel Rah, Deputy Chief Counsel, U.S. Department of Homeland Security, on October 7, 2022, attached as *Exhibit C*.

11. On August 23, 2023, Assistant State's Attorneys Troy C. Owens and Andrew G. Hamilton spoke, via telephone, with Walter B. Chahanovich who is an Associate Legal Advisor with the Office of the Principal Legal Advisor for U.S. Immigration and Customs Enforcement. During this telephone conversation, Assistant State's Attorney's Troy C. Owens and Andrew G. Hamilton advised Mr. Chahanovich of the filed litigation against Defendants, providing a case number, and requested a response from the Federal Government.

12. On December 13, 2023, Defendants sent via certified mail and email to all named Third-Party defendants, correspondence notifying of the suit filed against Defendants and requesting indemnification pursuant to contract between Defendants and Third-Party Defendants. A copy of this correspondence is attached as *Exhibit E*.

13. On February 27, 2024, 2024, Third Party Plaintiff's received a response from Third Party Defendants in which Third Party Defendants indicated that they have reviewed the materials submitted as well as ICE's regional enforcement obligations and found no basis upon which to meet the demands of Third Party Plaintiffs. This response is attached as *Exhibit F*.

14. Defendants submit this Third-Party Complaint for indemnity and contribution and specifically deny all allegations of wrongdoing contained in plaintiff's complaint, and by asserting this third-party complaint, in no way admit liability for plaintiff's damages.

15. Defendant United States Department of Homeland Security ("DHS"), headed by the Secretary of the Department of Homeland Security, defendant MAYORKAS,

is part of the Executive Branch of the United States Government and is headquartered in Washington D.C. DHS is responsible for enforcing federal laws governing, *inter alia*, boarder control and immigration.

16. Defendant U.S. Immigration and Customs Enforcement ("ICE") is a component of DHS, headquartered in Washington, D.C., and is in charge of enforcing federal immigration laws, including arresting and detaining noncitizens.

17. Defendant Alejandro Mayorkas is sued in his official capacity as the Secretary of DHS. In this capacity, he directs each of the component agencies within DHS, including ICE. As a result, in his official capacity, Secretary Mayorkas is responsible for the administration and enforcement of the immigration laws, including ICE officers' compliance with applicable statutes and regulations.

18. Defendant Patrick Lechleitner is the Acting Director of ICE. Acting Director Lechleitner is responsible for enforcement and removal operations for ICE, including ICE officers' compliance with the requirements of the Agreement and applicable statutes and regulations governing the expenditure of funds to detain noncitizens in county jails.

19. Defendant Jennifer M. Fenton is the Associate Director, Office of Professional Responsibility ("OPO"). The OPO is responsible for "uphold[ing] the agency's professional standards through a multi-disciplinary approach of security, inspections and investigations to promote organizational health, integrity, and accountability across the agency."[1] Additionally, the Office of Professional Responsibility "promote[s] organizational integrity by vigilantly managing ICE's

---

[1] https://www.ice.gov/about-ice/opr (last accessed March 8, 2024)

security programs, conducting independent reviews of ICE programs and operations, and impartially investigating allegations of serious employee and contractor misconduct."[2]

20. The OPO oversees the Office of Detention Oversight. OPO provides independent assessments of detention facilities consistent with ICE standards.[3]

21. Defendant Daniel A. Bible is the Executive Associate Director, Enforcement and Removal Operations ("ERO"). ERO "ensure[s] compliance with each contract's terms and conditions and the applicable detention standards"[4] and "manages all aspects of the immigration enforcement process, including the identification, arrest, detention and removal of noncitizens who are subject to removal or are unlawfully present in the U.S."[5] Furthermore, ERO "oversees immigration detention facilities, which are intended for the purpose of holding, processing, and preparing detainees for removal from the United States. Immigration detention is to ensure detainees' presence for immigration proceedings and deportation… Contracts and agreements with more than 200 facilities holding ICE detainees require adherence to ICE detention standards, which include the 2019 National Detention Standards, 2011 Performance-Based National Detention Standards (PBNDS) (revised in 2016), the 2008 PBNDS, the 2000 National Detention Standards for Non-Dedicated Facilities, or the 2020 Family Residential Standards. The treatment of detainees may also be governed by state and Federal law, court rulings, and agency policies. Detention

---

[2] Id.
[3] https://www.oig.dhs.gov/sites/default/files/assets/2021-11/OIG-22-03-Oct21.pdf#:~:text=ICE%20Enforcement%20and%20Removal%20Operations%20%28ERO%29%20is%20responsible,preparing%20detainees%20for%20removal%20from%20the%20United%20States. (Pg. 8, Last accessed March 8, 2024)
[4] https://www.ice.gov/detain/detention-management (Last accessed March 8, 2024)
[5] https://www.ice.gov/about-ice/ero#custody (Last accessed March 8, 2024)

standards aim to establish consistent conditions of confinement, program operations, and management expectations within ICE's detention system..."[6]

22. Third-Party Defendants promulgated rules, regulations, policies, and procedures for the housing, detention, and care for all civil immigrant detainees known as the Performance-Based National Detention Standards ("PBNDS") or ICE National Detention Standards ("NDS").[7] By extension, Third-Party Defendants solely created the standards of care which governed the care and management of civil immigrant detainees held within McHenry County Jail.

23. Third-Party Defendants, at their sole control, directed and managed the transportation and movements of civilly detained immigrants to and from McHenry County Jail, including the named plaintiffs in this action.

24. Third-Party Defendants, at their sole exclusive plenary discretion required the publishing of handbooks that are plead as exhibits against Third-Party Plaintiffs in the First Amended Complaint, and which memorialize the NDS and PBNDS alleged in the preceding paragraphs. Copies of the handbooks memorializing the NDS and PBNDS standards are attached as *Group Exhibit D*. Third-Party Plaintiffs had no discretion in the authorship of *Group Exhibit D* and were entirely reliant on Third-Party Defendants for the authorship thereof.

---

[6] https://www.oig.dhs.gov/sites/default/files/assets/2021-11/OIG-22-03-Oct21.pdf#:~:text=ICE%20Enforcement%20and%20Removal%20Operations%20%28ERO%29%20is%20responsible,preparing%20detainees%20for%20removal%20from%20the%20United%20States. (Last accessed March 8, 2024).

[7] https://www.ice.gov/detain/detention-management (Last accessed March 8, 2024).

25. During the period relevant to the allegations by named plaintiffs, Third-Party Plaintiffs, pursuant to the terms and conditions of the Contract, attached as *Exhibit A*, were required to submit to periodic inspections.

26. Third-Party Defendants, through their designee, The Nakamoto Group, Inc., inspected, using the NDS and/or PBNDS, the McHenry County Jail and the Civil Immigrant Detainee program from 2012 through 2021.

27. Each year, The Nakamoto Group, Inc. recommended that the McHenry County Jail receive a rating of "Meets Standards" or "Acceptable" relating to Third-Party Defendants NDS/PBNDS standards.

28. The Office of Detention Oversight ("ODO") "within the U.S. Immigration and Customs Enforcement (ICE) Office of Professional Responsibility (OPR) is responsible for conducting compliance inspections at ICE detention facilities in which noncitizens are housed for periods in excess of 72 hours and which have an average daily population of 10 or more noncitizens. These inspections assess compliance with the ICE National Detention Standards (NDS) 2000 or 2019, the Performance-Based National Detention Standards (PBNDS) 2008 or 2011, or the Family Residential Standards (FRS) 2020."[8]

29. Defendant Sylvie Renda is the Field Office Director ("FOD") of the ICE Chicago Field Office, which has responsibility for Illinois, Indiana, Wisconsin, Missouri, Kentucky, and Kansas. In her official capacity, FOD Renda is responsible for all

---

[8] https://www.dhs.gov/sites/default/files/2022-05/ICE%20-%20Office%20of%20Detention%20Oversight%20Inspections.pdf#:~:text=The%20Office%20of%20Detention%20Oversight%20%28ODO%29%20within%20the,average%20daily%20population%20of%2010%20or%20more%20noncitizens. (Last accessed March 8, 2024)

enforcement and detention, including ICE promulgated rules, regulations, and standards, conducted her jurisdiction.

30. ICE, through OPO, inspected, using the NDS and/or PBNDS, the McHenry County Jail at various times throughout 2012 through 2021.

31. DHS and ALEJANDRO MAYORKAS in his personal capacity as Secretary of Homeland Security are liable to Third-Party Plaintiffs for indemnification and contribution pursuant to the terms the Contract, attached as *Exhibit A*.

32. DHS and ALEJANDRO MAYORKAS in his personal capacity as Secretary of Homeland Security directed and controlled ICE, including its standards, policies, and inspections regarding the treatment of civil immigrant detainees housed at the McHenry County Jail.

33. DHS and ALEJANDRO MAYORKAS in his personal capacity as Secretary of Homeland Security directed and controlled ICE, including directing the control and transportation of civil immigrant detainees into and out of the McHenry County Jail during the time period alleged in plaintiff's complaint, see attached *Exhibit B*.

34. ICE and PATRICK J. LECHLEITNER in his personal capacity as Deputy Director and Senior Officer performing duties of Director are liable to Third-Party Plaintiffs for indemnification and contribution pursuant to the terms the Contract, attached as *Exhibit A*.

35. ICE and PATRICK J. LECHLEITNER in his personal capacity as Deputy Director and Senior Officer performing duties of Director directed and controlled

ICE, including its standards, policies, and inspections regarding the treatment of civil immigrant detainees housed at the McHenry County Jail.

36. ICE and PATRICK J. LECHLEITNER in his personal capacity as Deputy Director and Senior Officer performing duties of Director directed and controlled ICE, including directing the control and transportation of civil immigrant detainees into and out of the McHenry County Jail during the time period alleged in plaintiff's complaint, see attached *Exhibit B*.

37. ICE and PATRICK J. LECHLEITNER in his personal capacity as Deputy Director and Senior Officer performing duties of Director, and/or their designee, routinely inspected the McHenry County Jail and determined that the McHenry County Jail repeatedly met NDS standards.

38. ICE and DANIEL A. BIBLE in his personal capacity Executive Associate Director, Enforcement and Removal Operations are liable to Third-Party Plaintiffs for indemnification and contribution pursuant to the terms the Contract, attached as *Exhibit A*.

39. ICE and DANIEL A. BIBLE in his personal capacity Executive Associate Director, Enforcement and Removal Operations directed and controlled ICE, including its standards, policies, and inspections regarding the treatment of civil immigrant detainees housed at the McHenry County Jail.

40. ICE and DANIEL A. BIBLE in his personal capacity Executive Associate Director, Enforcement and Removal Operations directed and controlled ICE, including directing the control and transportation of civil immigrant detainees into

and out of the McHenry County Jail during the time period alleged in plaintiff's complaint, see attached *Exhibit B*.

41. ICE and DANIEL A. BIBLE in his personal capacity Executive Associate Director, Enforcement and Removal Operations, and/or their designee, routinely inspected the McHenry County Jail and determined that the McHenry County Jail repeatedly met NDS standards.

42. ICE and SYLVIE RENDA, in her personal capacity of Director ICE Chicago Field Office, are liable to Third-Party Plaintiffs for indemnification and contribution pursuant to the terms the Contract, attached as *Exhibit A*.

43. ICE and SYLVIE RENDA, in her personal capacity of Director ICE Chicago Field Office, directed and controlled ICE, including its standards, policies, and inspections regarding the treatment of civil immigrant detainees housed at the McHenry County Jail.

44. ICE and SYLVIE RENDA, in her personal capacity of Director ICE Chicago Field Office, directed and controlled ICE, including directing the control and transportation of civil immigrant detainees into and out of the McHenry County Jail during the time period alleged in plaintiff's complaint, see attached *Exhibit B*.

45. ICE and SYLVIE RENDA, in her personal capacity of Director ICE Chicago Field Office, and/or their designee, routinely inspected the McHenry County Jail and determined that the McHenry County Jail repeatedly met NDS standards.

46. ODO and JENNIFER M. FENTON, in her personal capacity Associate Director, Office of Professional Responsibility is an additional oversight agency within ICE charged with inspecting detention facilities and providing recommendations to

ERO. ODO in their capacity as an agency within ICE promulgated, created, and enforced, through inspection, ICE's detention standards which governed the manner in which Third-Party Plaintiffs housed civil immigrant detainees.

47. Third-Party Plaintiffs had no authority or discretion to modify the conditions, requirements, and rules for the housing of civil immigrant detainees.

48. The rules regulations and practices of housing civil immigrant detainees in the McHenry County Detention Center were exclusively and plenarily controlled by Third-Party Defendants based upon the latter's ability to control the same under Exhibits A, pursuant to said contracts. This exclusive and plenary control by Third-Party Defendants applied specifically to the cleaning requirements imposed upon civil immigration detainees for their immediate living spaces and common areas.

49. Third-Party Plaintiffs had no power to deviate from the rules, regulations, and practices of housing civil immigrant detainees as imposed upon them pursuant to *Exhibit A*, pursuant to said contract. This exclusive and plenary control by Third-Party Defendants applied specifically to the cleaning requirements imposed upon civil immigration detainees for their immediate living spaces and common areas.

50. Third-Party Defendants had exclusive, plenary, and final control over the manner in which civil immigrant detainees were detained for purposes of their conditions of confinement while waiting for determination as to their immigration status. Requirements that civil immigration detainees clean their immediate living spaces and common living areas were imposed upon Third-Party Plaintiffs by the rules,

regulations, and requirements promulgated on Third-Party Plaintiffs by Third-Party Defendants.

51. If Third-Party Plaintiffs are found liable for the allegations contained in First Amended Complaint, based upon the enforcement of rules contained within *Exhibits A* and *D* pertaining to the rules regulations and requirements imposed upon civil immigration detainees for cleaning their immediate living spaces and common areas, Third-Party Defendants, and their designees, failed to exercise reasonable care in their self-imposed mandated rules regulations and restrictions that were intended to ensure that Third-Party Plaintiffs meet Third-Party Defendants' detention standards.

52. As a result of Plaintiff's First Amended Complaint and their attempts to recover damages, costs, interest, penalties, attorney fees, and costs against Third-Party Plaintiffs, Third-Party Plaintiffs are exposed to liability for the alleged violations of state and federal law.

53. As a result of Plaintiff's Complaint against Third-Party Plaintiffs, Third-Party Plaintiffs have incurred and will continue to incur litigation costs, expenses, and other potential losses and/or damages in defending the instant action and in pursuing the third-party claims.

54. Third-Party Plaintiffs are entitled to common law indemnification and/or contribution from Third-Party Defendants for all damages, costs, penalties, attorney fees, and costs Plaintiffs recover against Third-Party Plaintiffs and in addition, all litigation costs, expenses, attorney's fees, and other potential losses

and/or damages Third-Party Plaintiffs incur in defending Plaintiff's claims in the instant action.

WHEREFORE, Third-Party Plaintiffs verily allege that they have no liability in the instant action whatsoever. Pleading in the alternative, and without prejudice to their denials to Plaintiff's complaint at law, Third-Party Plaintiffs pray that if Plaintiff recovers judgment against Third-Party Plaintiffs under any of the counts in Plaintiff's First Amended Complaint, that judgment be entered in favor of Third-Party Plaintiffs and against Third-Party Defendants.

    Respectfully Submitted,

    County Defendants
    Third-Party Plaintiffs

By:    s/Troy Owens
    Troy Owens
    Assistant State's Attorney

Patrick D. Kenneally
McHenry County State's Attorney
Andrew Hamilton (ARDC No. 6325652)
Troy C. Owens (ARDC No. 6208293)
Kyle Bruett (ARDC No. 6308655)
Assistant State's Attorneys
McHenry County Government Center
2200 N. Seminary Avenue
Woodstock, IL  60098
Tel. (815) 334-4159
Fax (815) 334-0872
aghamilton@mchenrycountyil.gov
tcowens@mchenrycountyil.gov