## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| ALEKSEY RUDERMAN, JASON CLARKE, BASARU ASOLO, JAMES FORERO, and CHRIS POCKNELL, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MCHENRY COUNTY, MCHENRY COUNTY SHERIFF'S OFFICE, BILL PRIM, KEITH NYGREN, MICHAEL CLESCERI, DANIEL SITKIE, DAVID DEVANE, and DANIEL SEDLOCK, <br><br> Defendants. | Case No. 3:22-cv-50115 <br><br> Judge Iain D. Johnston <br><br> Magistrate Judge Margaret J. Schneider |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE AMENDED AFFIRMATIVE DEFENSES

The Court should deny Defendants' request to belatedly add their proposed affirmative defense of derivative sovereign immunity.[1] If allowed, this proposed affirmative defense would inject new fact issues into the case. Defendants easily could have raised this affirmative defense at the outset of this case, and if Defendants had done so, Plaintiffs would have had a fair opportunity to obtain discovery needed to challenge it. Defendants have not presented any justification for their lengthy delay in raising this brand-new defense, and adding it at this late stage in the litigation

---

[1] Plaintiffs do not oppose Defendants' request to add their proposed Eleventh Affirmative Defense because it appears to present a pure question of law and thus will not require additional fact discovery.

would severely prejudice Plaintiffs' ability to obtain discovery on the affirmative defense and advance their claims toward resolution.

## BACKGROUND

This is a putative class action case brought by a group of former civil immigration detainees at the McHenry County Jail. McHenry County contracted with the federal government to house detainees on behalf of U.S. Immigration and Customs Enforcement ("ICE") and received a payment of $95 a day for each civil immigration detainee. Plaintiffs allege that jail officials subjected them to forced labor in the form of cleaning the jail facilities in violation of the federal Trafficking Victims Protection Act (the "TVPA") and state law. ECF No. 21.

Plaintiffs filed their Complaint nearly two and a half years ago—on April 15, 2022. ECF No. 1. Following Defendants' first motion to dismiss, Plaintiffs filed an Amended Complaint on August 9, 2022. ECF No. 21. Defendants moved to dismiss again, and except for certain named Plaintiffs' state law claims that this Court deemed untimely, this Court denied Defendants' motion to dismiss on January 9, 2023. ECF No. 52. Defendants then filed their Answer and Affirmative Defenses on February 6, 2023. ECF No. 56. This Court set a deadline to file amended pleadings by December 15, 2023. ECF No. 55. On Defendants' motion, this Court then extended this deadline to March 14, 2024, to allow Defendants to file a third-party complaint against certain federal government agencies and actors. ECF No.90. The deadline to amend the pleadings came and went without Defendants attempting to add a derivative immunity defense.

During two years of litigation, Defendants never indicated that they planned to raise a derivative immunity defense. Defendants never pled this affirmative defense and disclosed nothing about it in response to Plaintiffs' written discovery about their affirmative defenses. *See, e.g.,* Exhibit 1 (Defendant's Answers to Plaintiffs' First Set of Interrogatories, ROG No. 13). From

2

September 14, 2022, when Plaintiffs first issued written discovery to Defendants, until September 11, 2024, when Defendants first indicated their intention to raise this affirmative defense, Plaintiffs had no reason to seek discovery that would disprove the defense. During this two-year period, Plaintiffs spent significant time and resources obtaining written and oral discovery. To obtain written discovery, Plaintiffs issued several discovery deficiency letters to Defendants, met and conferred with Defendants several times over discovery disputes, and worked cooperatively with Defendants to resolve many discovery issues, including by way of an agreed-upon ESI search protocol. Plaintiffs also found it necessary to file, and fully brief, three Motions to Compel to date. As to oral discovery, Plaintiffs took 10 depositions of Defendants and McHenry County Sheriff's Office staff. Plaintiffs completed all planned fact depositions, and Defendants also indicated as of September 6, 2024, that they did not intend to take any additional fact depositions beyond those already scheduled. ECF No. 118 at 1.

The Court initially set a fact discovery deadline of April 29, 2024, then, following an agreed motion by the parties, the Court extended fact discovery to June 28, 2024. ECF No. 92. On Defendants' motion, this Court extended the fact discovery deadline again to September 26, 2024. ECF No. 107. After this Court granted Defendants' motion for leave to file an amended third-party complaint, this Court struck the September 26, 2024 fact discovery deadline. ECF No. 120.

On September 13, 2024, Defendants moved for leave to file two amended affirmative defenses: one claiming that the TVPA is vague and therefore unconstitutional (styled as the Eleventh Affirmative Defense), and another claiming that derivative sovereign immunity protects Defendants from liability (styled as the Twelfth Affirmative Defense). ECF No. 122-1. Plaintiffs now object to the late addition of the Twelfth Affirmative Defense.

3

**ARGUMENT**

This Court should deny Defendants' attempt to belatedly raise a derivative immunity defense because Defendants unreasonably delayed in raising it and its addition to the case at this late stage would cause Plaintiffs undue prejudice. Once a pleading can no longer be amended as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be freely given when justice so requires, it is not to be automatically granted." *Johnson v. Cypress Hill*, 641 F.3d 867, 871-72 (7th Cir. 2011) (internal quotations and alteration omitted). Leave to amend affirmative defenses may be properly denied under Rule 15(a)(2) for reasons of undue delay and undue prejudice to the opposing party. *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005). In addition, a party who seeks to amend a pleading after the amendment deadline must meet the more demanding "good cause" standard under Rule 16(b)(4). *Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014). A court may apply Rule 16(b)(4)'s "heightened standard" before turning to Rule 15(a). *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852 (7th Cir. 2022). "[F]ailure to satisfy either rule is fatal to the motion to amend." *Id.*

For the below reasons, Defendants cannot satisfy the "good cause" standard under Rule 16(b)(4) because they have offered no valid justification for their delay. Moreover, Defendants' motion does not pass muster under Rule 15(a) because their undue delay deprives Plaintiff of discovery into the new affirmative defense.

## I. Defendants Have Not Shown "Good Cause" For Their Delay In Raising A Purported Derivative Sovereign Immunity Defense.

Defendants have not established "good cause," under Rule 16(b)(4), to justify their belated addition of a derivative immunity defense after the deadline to amend the pleadings, which passed

4

six months ago on March 14, 2024. The central consideration in assessing whether good cause exists is the diligence of the party seeking to amend. *Allen, LLC*, 41 F.4th at 852–53. Defendants were not diligent here.

Defendants argue that their proposed derivative immunity defense arose from "legal analysis" that was "not available at the time Defendant initially filed its affirmative defenses." ECF No. 122 at ¶ 12. That is baseless. The case Defendants themselves cite discussing the derivative immunity doctrine is dated March 29, 2021—nearly two years before Defendants even filed their answer in this case. ECF No. 122 at ¶ 13 (citing *Dawson v. Great Lakes Educ. Loan Servs., Inc.*, No. 15-CV-475-JDP, 2021 WL 1174726, at *2 (W.D. Wis. Mar. 29, 2021)). There is no reason that Defendants could not have asserted this defense from the very start of the case. Defendants argue that the derivative immunity doctrine is "obscure" as if to suggest that this justifies their failure to consider it earlier. ECF No. 122 at ¶ 13. It does not. Contrary to Defendants' assertion, the derivative sovereign immunity defense was indeed "available" to them before September 2024; they simply overlooked it. ECF No. 122 at ¶ 12; *see Daugherity v. Traylor Bros.*, 970 F.2d 348, 352 (7th Cir. 1992) (ruling that district court should have denied defendant's request to belatedly add affirmative defense where defendant conceded that it had "simply overlooked" the facts underlying the defense until it sought leave to amend).

Having failed to present any valid justification for their nineteen-month delay in raising their purported derivative immunity defense, Defendants cannot satisfy Rule 16(b)(4), and their motion should be denied on that basis. *See, e.g., Tristate Bolt Co. v. W. Bend Mut. Ins. Co.*, No. 118CV00212TLSSLC, 2020 WL 503036, at *2–3 (N.D. Ind. Jan. 31, 2020) ("Defendants' motion [for leave to amend their affirmative defenses] does not pass scrutiny under Rule 16(b)(4), which dooms the motion at the outset.").

## II.     Defendants' Undue Delay Will Result In Prejudice To Plaintiffs.

Though Rule 16(b)(4) alone justifies denial of Defendants' motion to amend, Defendants' motion also fails under the Rule 15(a)(2) standard because it is highly prejudicial to Plaintiffs. It injects new fact issues into the case near the close of fact discovery, thereby denying Plaintiffs a meaningful opportunity to conduct discovery into those facts. The only way to cure this prejudice would be to extend fact discovery and re-open Defendant depositions, as explained in further detail below. Yet, even if the Court were to grant such relief, Plaintiffs would still be prejudiced by the additional rounds of discovery and significant delay in resolution of their claims.

"[P]rejudice [to the nonmoving party] is more likely when an amendment comes late in the litigation and will drive the proceedings in a new direction." *Allen*, 41 F.4th at 853. "Such an amendment will often require significant discovery on new issues." *Id.* This is problematic even where the fact discovery deadline has not yet passed, where, as here, "discovery on the original issues [is] nearing completion." *See id.* at 854. Courts frequently deny requests to belatedly add affirmative defenses where their addition would result in extensive additional discovery and, thus, delay resolution of the matter. *See, e.g.*, *Al-Kassar v. United States*, No. 218CV00086JPHDLP, 2021 WL 3931178, at *2 (S.D. Ind. Sept. 2, 2021) (refusing defendant's request to add a new affirmative defense because of defendant's undue delay and the prejudice to plaintiff in the form of "new rounds of discovery"); *Tristate Bolt Co.*, No. 2020 WL 503036, at *2–3 (refusing defendant's request to add a new affirmative defense because defendant's undue delay would prejudice plaintiff by "result[ing] in extension of the discovery period" and "delay[ing] the resolution of the case").

Here, Defendants have attempted to insert this new defense very late in the litigation. Indeed, the parties have engaged in two years of written and oral discovery, and Defendants filed

their motion to amend *nineteen months* after filing their original answer and affirmative defenses. Courts have found much shorter delays to be prejudicial to the plaintiff. *See, e.g.*, *Boyd v. City of E. St. Louis, IL*, No. 3:04 CV 96 GPM, 2005 WL 8173744, at *1–2 (S.D. Ill. Mar. 3, 2005) (rejecting defendant's attempt to belatedly add an affirmative defense because "such a large amount of time [six months] between the filing of the answer and the filing of [the motion to amend] can only imply that the plaintiff will be prejudiced by the failure to seek this amendment sooner").

If permitted at this late stage, Defendants' proposed affirmative defense would introduce new factual issues into the case that would require additional rounds of discovery. Specifically, to take advantage of derivative immunity, a federal government contractor must prove that the federal government both: (1) "authorized and directed" the challenged conduct, and (2) "validly conferred" such authorization. *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20-21 (1940); *accord Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016) (derivative immunity is available to a federal contractor who "simply performed as the Government directed"). If Defendants are aware of facts to support this affirmative dense, they have not revealed them in the two years of discovery completed to date. More importantly, if Defendants had pled this defense, Plaintiffs would have sought discovery specifically aimed at defeating it.

For example, when the parties negotiated over ESI search terms and custodians thirteen months ago, Plaintiffs would have sought search terms and custodians likely to turn up communications relevant to this defense. Similarly, Plaintiffs have already taken ten depositions of: the six individual defendants, the current McHenry County Sheriff Robb Tadelman, and three of Defendants' witnesses who work for the McHenry County Sheriff's Office. If Defendants timely raised this affirmative defense, Plaintiffs could have questioned each of these individuals

about supposed authorization or direction by the federal government to obtain civil immigration detainees' forced cleaning labor under threat of punishment, including:

(i)    every conversation with any ICE representative regarding cleaning by civil immigration detainees and the punishment they received for not cleaning;

(ii)    the scope of any inspections performed on behalf of ICE and whether the inspectors witnessed the civil immigration detainees cleaning in the dayroom or being punished for not cleaning;

(iii)    whether the jail provided disciplinary records involving a detainees' failure to clean to any ICE representative or inspector;

(iv)    whether any of the deponents informed any ICE agent or inspector that the ICE detainees were working without pay; and

(v)    any input by any representative of ICE into the jail's handbooks for ICE detainees or the jail's general orders in so far as they pertain to (a) cleaning by ICE detainees without pay and (b) punishments for refusing to clean.

Plaintiff also would have sought third party discovery into the agencies who performed inspections at the McHenry County Jail on behalf of ICE over the course of a decade and then deposed each of those inspectors as to:

(i)    the scope of their inspections;

(ii)    what if any directives they received from ICE regarding the scope of the inspections;

(iii)    whether they were aware of McHenry County Jail's policy of forcing ICE detainees to clean the dayrooms without pay and under threat of cell lockdown and solitary confinement; and

(iv)    any conversations with any McHenry County Sheriff's Office staff regarding these practices.

Plaintiffs also likely would have deposed ICE designees regarding:

(i)    any ICE policies that applied to the McHenry County Jail's detention of ICE detainees, and in particular cleaning labor by ICE detainees; and

(ii)    any other facilities across the country with contracts to house ICE detainees, and whether those facilities obtained ICE detainee cleaning labor by way of a *voluntary* work program in which they paid or otherwise rewarded detainees for their work.

8

Furthermore, Plaintiffs likely would have issued additional written discovery on Defendants as well as written discovery on Third-Party Defendant the United States regarding these same topics. In *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650–51 (4th Cir. 2018), the parties required 75 days of discovery focused *only* on the applicability of derivative immunity. This discovery included "six subpoenas, four Touhy requests, numerous other document requests, [and] six depositions of [Defendant's] and CMS employees." In this case, there is no reason to believe that the derivative immunity discovery would be any simpler than it was in *Cunningham*.

Defendants mischaracterize the derivative immunity defense as a mere "clarification of existing affirmative defenses" and argue that the parties have already undertaken "a substantial amount of fact discovery" as to this defense. ECF No. 122 at ¶¶ 12, 15. Not so. None of Defendants' existing affirmative defenses depend on whether the federal government authorized and directed Defendants' wrongful conduct, and, as a result, to date Plaintiffs have not conducted any fact discovery on this issue.

In sum, Defendants' new derivative immunity defense, if permitted, would significantly prejudice Plaintiffs' ability to obtain the necessary discovery. Moreover, even if Plaintiffs are permitted additional time for discovery and to re-open the Defendant depositions, they will be prejudiced by the additional rounds of discovery and thus further delay in resolution of their claims. Accordingly, Defendants' motion for leave to amend fails for the independent reason that it does not satisfy the Rule 15(a)(2) standard.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Leave to File Amended Affirmative Defenses with respect to their proposed Twelfth Affirmative Defense.

Dated: September 30, 2024                    Respectfully submitted,

                                             /s/ Margaret E. Truesdale
                                             *One of the Attorneys for Plaintiffs*
                                             *and the Proposed Class*

Elizabeth N. Mazur
Charles D. Wysong
Margaret E. Truesdale
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
312.580.0100
emazur@hsplegal.com
cwysong@hsplegal.com
mtruesdale@hsplegal.com

Raphael Janove
Janove PLLC
500 7th Avenue, 8th Floor
New York, NY 10018
646.347.3940
raphael@janove.law

Jay Kumar
Jay Kumar Law
73 W. Monroe St., #100
Chicago, IL 60603
312.767.7903
Jay@JayKumarLaw.com

Jacob S. Briskman
Law Office of Jacob S. Briskman
2054 N. California Ave.
Chicago, IL 60647
312.945.6207
Jacob.Briskman@gmail.com
*Attorneys for the Plaintiffs and the Proposed Class*